Manuel Joaquim MACEDO, etc., et al.,
Plaintiffs-Appellants,

v.

The BOEING COMPANY, et al.,
Defendants-Appellees.

Keith L. BOSKOFF, etc., et al.,
Plaintiffs-Appellants,

v.

TRANSPORTES AEREOS PORTUGUESES, etc., Defendant-Appellee.

No. 80–1559.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 5, 1980.

Decided Nov. 23, 1982.

---

Charles F. Krause, New York City, for plaintiff-appellants.

Donald M. Haskell, Haskell & Perrin, Chicago, Ill., George N. Tomplins, Jr., New York City, for defendants-appellees.

Before SWYGERT and FAIRCHILD, Senior Circuit Judges, and BARTELS,* Senior District Judge.

FAIRCHILD, Senior Circuit Judge.

On November 19, 1977, a Boeing Airliner owned and operated by Transportes Aereos Portugueses (TAP) crashed on landing at Funchal Airport, Madeira, Portugal. The flight had originated at Lisbon. One hundred thirty-two (132) persons on board were killed and 32 were injured.

A number of plaintiffs began an action, 79–C–2498, in the Northern District of Illinois, against TAP, Boeing, and five manufacturers of components. Diversity jurisdiction was alleged. TAP moved to dismiss for lack of complete diversity and, with respect to the five Boskoff plaintiffs, that if the entire complaint is not dismissed, the Boskoffs' claims against TAP be severed and stayed pending the outcome of prior pending litigation between the Boskoffs and TAP in a New York state court. The other defendants moved for dismissal on the grounds of *forum non conveniens,* stating the matter should be litigated in Portugal. Alternatively, they moved for transfer to the Western District of Washington. On January 11, 1980, 79–C–2498 was dismissed for lack of diversity. No appeal has been taken from that dismissal.

On November 14, 1979, however, plaintiffs had filed two other diversity actions, informing the court that the original action had essentially been separated into the two new actions, and suggesting that the motion of defendant manufacturers be deemed to have been made in the new *Macedo* action. Treating the motion as applicable to both new actions, the court granted dismissal on the ground of *forum non conveniens.* After a motion to reconsider, the Judge entered the order appealed from, dismissing the actions subject to the conditions that all defendants consent to the jurisdiction of the courts of Portugal and that defendants not raise any statute of limitations defense in Portugal.

Action No. 79–C–4771 was brought by five plaintiffs who make claims on account of the deaths of Leslie and Barbara Boskoff. Leslie and Barbara, residents of Florida, were the only United States passengers on the flight. The Boskoff plaintiffs reside in the United States, but none of them in Illinois. The defendant is TAP. It is claimed that TAP knew or should have

* Senior District Judge John R. Bartels of the Eastern District of New York sitting by desig-

nation.

known that the aircraft was unsafe and not airworthy and was not suitable for operation into an airport having runways less than 6,500 feet long, and that TAP operated the aircraft negligently. The Boskoff plaintiffs are also plaintiffs in an action pending in a New York state court. Boeing and TAP are defendants. The claim against TAP is the same.

Action No. 79–C–4772 was brought by fifteen plaintiffs who were injured, and by 157 plaintiffs on account of 68 deaths. All the injured plaintiffs are aliens and eight are citizens of Portugal. Of the 157 plaintiffs, 91 are citizens of Portugal, and all are aliens except the five Boskoff plaintiffs, and one resident of Massachusetts who is one of five plaintiffs asserting a claim on account of the death of one of the alien decedents. The defendants are Boeing and five manufacturers of components, i.e., United Technologies Corporation, engines; The Crane Company and Hydro-Aire, Inc., skid control system; B.F. Goodrich Corporation, wheels, tires, and brakes; and The Bendix Corporation, braking equipment. Describing the claims very broadly, they are, among other things, that defendants knew or should have known that the aircraft would be used to land at Funchal on a wet runway only 5,052 feet long, and that they failed to manufacture the aircraft and components so that the aircraft would not be unreasonably dangerous, were negligent with respect to manufacturing, testing, instructions, and warnings, and breached express and implied warranties.

We must examine the decision of the district court to determine whether it was a clear abuse of discretion. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

> The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.

*Id.* at 257, 102 S.Ct. at 266.

In its January 11, 1980 decision, the district court adverted to the private and public interest factors enumerated in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

With respect to sources of proof, the Judge wrote that they

> are located in several countries. The foreign plaintiffs maintain that the aircraft was defective and, therefore, relevant materials include, *inter alia,* documents relating to the design and specifications of the aircraft and to investigations into its safety. These documents are located in the United States. However, the wreckage of the aircraft, the airport, witnesses, maintenance records, air traffic controllers, documents relating to the operating procedures of TAP, the flight data recorder and transcripts of conversations of the crew, and official investigations and reports, are all in Portugal. . . . In addition, evidence relating to damages is located overwhelmingly in Portugal and other European countries although the evidence relevant to damages of American plaintiffs is located here.

With respect to compulsory process and cost of obtaining unwilling witnesses, the Judge said:

> All witnesses to the air crash are located outside the United States. It is doubtful whether a court of the United States could enforce process compelling the attendance of persons, with relevant knowledge, who are not parties to the litigation. However Portuguese persons and agencies are, presumably, subject to the jurisdiction of the courts of Portugal which could enforce its process. The witnesses who can testify as to the design and manufacture of the aircraft or its parts are, for the most part, agents or employees of the defendants. Thus compelling their attendance should be no problem.

With respect to a view of the premises, the Judge noted plaintiffs' argument that a

view is unnecessary, but stated that the circumstances of the crash are relevant to such a case.

As to public interest factors, the Judge considered the congestion of the docket of the district; the lack of any relation between the litigation and the community from which the jurors would come. He observed:

> The fact that the aircraft was manufactured in the United States does not make the accident, involving a Portuguese airline, an airport in Portugal, predominantly Portuguese plaintiffs and Portuguese witnesses, any less a matter of local Portuguese interest. Plaintiffs cannot, by characterizing their causes of action as products liability claims, eliminate the very intimate relation of Portugal to the accident; the products liability claims arise in the context of a Portuguese accident.

The court noted that courts give more deference to the choice of forum of an American plaintiff, but pointed out that "Illinois is not the residence of the American plaintiffs, and Illinois bears no relation to any issue relevant to the litigation."

The manufacturer defendants had moved, alternatively, for transfer under 28 U.S.C. § 1404(a) to the Western District of Washington. Conceding that the principal place of business of several defendants is in the Pacific Northwest, the Judge concluded that "the litigation of these claims should take place in Portugal" and that Seattle is not a significantly more convenient forum than Chicago.

Plaintiffs filed a motion for reconsideration, which was considered in a decision dated January 25, 1980. The Judge noted several matters brought to his attention by plaintiffs. Although he had previously overlooked the presence of the six American plaintiffs among the 157 in 79–C–4772, he concluded this did not alter the fact that "the controversy remains one involving a Portuguese accident of a Portuguese owned and maintained aircraft, witnessed by Portuguese citizens."

The Judge noted that, as plaintiffs asserted, TAP had moved for dismissal of 79–C–2498 for lack of diversity and had not claimed *forum non conveniens*. Thus there had not been a motion for dismissal of 79–C–4771 on that basis, although the Judge had so assumed. In any event, TAP filed its opposition to the motion for reconsideration, supporting the dismissal on the ground of *forum non conveniens*.

In the January 11 decision, the Judge had said, in finding the courts of Portugal a significantly more convenient forum, that all defendants will voluntarily submit to jurisdiction there, and "The courts of Portugal, furthermore, are able to provide complete relief. No one has argued to the contrary." On motion for reconsideration plaintiffs contended that the courts of Portugal cannot provide complete relief. Although deeming it unlikely that the courts of Portugal would refuse to entertain suits by aggrieved individuals, whether the suits be based on products liability or any other theory, the Judge ordered defendants to respond. The parties submitted affidavits of Portuguese counsel. Evidently, finding those of defendants more persuasive, the court denied the motion to reconsider on March 18, 1980, and on March 21, 1980 ordered the actions dismissed subject to the following conditions:

1. That all defendants consent to the jurisdiction of the courts of Portugal in any actions filed by plaintiffs,

2. That defendants will not raise any statute of limitations defense against plaintiffs if they file their actions in Portugal on or before September 30, 1980; and

3. That if any of the above conditions are not observed, plaintiffs shall have the right to move to reinstate this action in the Northern District of Illinois, provided such motion for reinstatement is filed within sixty (60) days of the alleged violation of any of these conditions.

I. *The Existence of an Alternative Forum*

At the outset of any *forum non conveniens* inquiry, the court must determine

whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is "amenable to process" in the other jurisdiction.... In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute.

*Reyno,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22.

Plaintiffs argue that a second forum does not qualify as an alternative forum unless each defendant was amenable to process in the second forum when plaintiff began his action. Plaintiffs contend that a defendant's offer to consent to personal jurisdiction does not suffice. Plaintiffs' position would render insufficient all dismissals on this ground conditioned on consent to personal jurisdiction. Plaintiffs rely on *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). The *Hoffman* holding rested on particular language in 28 U.S.C. § 1404(a), permitting transfer of an action to a district "where it might have been brought." It has been held inapplicable to dismissal where the more convenient forum is foreign. *Schertenleib v. Traum,* 589 F.2d 1156, 1163 (2d Cir.1978).

In *Reyno,* the Supreme Court appears to have approved the decision of the district court, and referring to that decision, recited: "It began by observing that an alternative forum existed in Scotland; Piper and Hartzell had agreed to submit to the jurisdiction of the Scottish courts and to waive any statute of limitations defense that might be available." 454 U.S. at 242, 102 S.Ct. at 258. Later the Court noted the need to determine whether there exists an alternative forum, ordinarily deemed to exist when the defendant is "amenable to process" in the other jurisdiction. Although the Court did not directly address the proposition, it is difficult to imagine that the Court would in some future case reject a consent to personal jurisdiction in satisfaction of the requirement.

Thus we hold that the courts of Portugal fulfill at least this threshold requirement.

Plaintiffs further contend that complete relief is not available in Portugal. On this question, the parties offered affidavits of Portuguese lawyers. It clearly appears that there are many differences between the judicial system of Portugal and the systems found in the United States. Some of these differences would be considered only in the area of balancing the relevant private interest factors. There are, however, two issues going directly to the adequacy of remedy on the products liability claims.

Defendants' three experts agree that a Portuguese court has jurisdiction to decide a claim, by or on behalf of a person injured or killed in Portugal, that the injury or death was caused by a product negligently manufactured outside Portugal. Plaintiffs' expert asserted that "The Portuguese courts are not internationally competent for an action of product liability relating to a product defectively manufactured outside Portuguese territory.... That rule stands although the defect of the product manifested itself in Portuguese territory and the damage occurred here."

With all respect, the reasoning by which the latter conclusion was reached seems unpersuasive and we cannot reject the finding of the district court in favor of the adequacy of the Portuguese remedy as clearly erroneous. If there is any real possibility of a rejection of plaintiffs' case against the manufacturers for lack of jurisdiction, plaintiffs are protected by reinstatement of their case here.

There was agreement among the experts on several points. In Portugal, civil cases are tried by three judges, not by a jury. A witness who does not speak Portuguese testifies through an interpreter. Documents in other languages must be accompanied by a translation. There are procedures for pretrial discovery, although undoubtedly different from those available in the United

States. Lawyers are not permitted to make contingent fee agreements. Court fees are recoverable from the losing party. A substantial prepayment of costs must be made by a plaintiff. We are told that "A claim for $200,000 would require costs to be paid to the court in the approximate sum of $2,000. A portion of these costs must be advanced five (5) days after filing the complaint and the answer, and approximately 70% must be paid before the trial starts." So-called products liability is based on negligence. Punitive damages are not awarded.

None of the experts refers to specific cases where products liability awards have been made or refused. The experts have substantial periods of experience. The absence of reference suggests that similar products liability cases are not common in Portugal, though cognizable in theory.

The Supreme Court has told us that the absence of a strict liability principle and the probability of smaller damages do not make the remedy available in a foreign court inadequate. *Reyno,* 454 U.S. at 255, 102 S.Ct. at 265.

We understand that the other differences referred to may, like differences in substantive law unfavorable to plaintiff, be given weight in the balancing process, but if treated like differences in substantive law, the weight should ordinarily not be conclusive or even substantial. *Reyno,* 454 U.S. at 247, 102 S.Ct. at 260.

## II. Deference to Plaintiffs' Choice of Forum

▪ There is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), *Reyno,* 454 U.S. at 255, 102 S.Ct. at 265. Courts routinely give less weight to a foreign plaintiff's choice of forum. Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court dismissal is proper. *Reyno,* 454 U.S. at 256 n. 23, 102 S.Ct. at 266 n. 23.

In the two actions, there are 157 plaintiffs, six of whom are United States citizens and residents. The Northern District of Illinois is not the "home forum" for any. The five Boskoff plaintiffs (American) were able to obtain personal jurisdiction over TAP and Boeing in New York, and brought an action there. We understand, however, that the Northern District of Illinois is, if not the only, one of a few districts in which all present defendants could have been served. Although the Northern District of Illinois is not the home forum for the Boskoff plaintiffs, it may well be the closest available forum.

It seems to us that as to the Boskoff plaintiffs, at least, the plaintiffs' choice is entitled to considerable deference, particularly in view of the comparative difficulties they face in bringing action in Portugal, later discussed.

## III. Private Interest Factors

The district court laid heavy emphasis on the availability in Portugal of evidence relating directly to the occurrence of the crash, including the possibility of a view of the site. He acknowledged that relevant documentary evidence in 79–C–4772 is in the United States. Evidence on damages is, in the greatest number of instances, available in Portugal or elsewhere outside of the United States.

The conflict concerning the facts of the accident relates to the point at which the aircraft touched down, and the speed at which it landed. Although the court noted a dispute concerning the length of the runway, it may not have much significance (5,052 feet according to plaintiffs; 5,249 according to the manufacturer defendants). Concededly the weather was bad and it was night. There is agreement that the plane landed on its third attempt.

Plaintiffs' theory of liability as to the manufacturer defendants is that the 727–200 aircraft could not be brought to a stop on a wet 5,052 foot runway; that defendants misinformed the FAA, TAP, and the pilot about the capabilities of the aircraft in landing on short and wet runways.

The manufacturer defendants asserted that

> instead of touching down on the runway at the proper location, the aircraft touched down nearly halfway down the 5249-foot runway. Furthermore, the touchdown speed was substantially in excess of the proper landing speeds. The pilot was unable to stop the aircraft on the remaining length of wet and slippery runway and the aircraft ran off the end and crashed on a beach far below the runway.

Presumably the manufacturer defendants hope to establish that pilot error was the only effective cause of the crash, or at least that if they are liable at all they may seek indemnity or contribution from TAP. Although the manufacturer defendants referred to the responsibility of the Portuguese Directorate General of Civil Aviation for air traffic control and airport maintenance, they have not suggested any claim they desire to make against the agency.

The only supporting affidavit as to the occurrence of the crash was that of a Mr. Campbell who described himself as Boeing's "Airline Support Manager—Flight Training." His only assertion was

> On the basis of materials gathered by Boeing concerning the crash ..., it appears that the pilot attempted to land at an excessive speed and landed too far down the runway. If the pilot had utilized proper landing procedures, he would have been able to stop safely despite the runway conditions at the time of the accident.

He offered no description of the "material" to which he referred.

Although a list of witnesses and summary of expected testimony is unnecessary, "defendants must provide enough information to enable the District Court to balance the parties' interests." *Reyno*, 454 U.S. at 258–59 & n. 27, 102 S.Ct. at 267 & n. 27. Some idea of the type of evidence available to establish the landing speed and location would have made the motion more persuasive.

The district court stated that the wreckage, the airport, witnesses, maintenance records, air traffic controllers, documents relating to the operating procedures of TAP, the flight data recorder and transcripts of conversations of the crew, and official investigations and reports are all in Portugal.

Plaintiffs suggest that the wreckage could be examined and photographed and the evidence produced anywhere. Photographs and diagrams of the runway can also be readily produced. They question the significance of a view of the scene. Documents and transcripts could be produced in the United States and translated as readily as documents now in the United States could be produced and translated in Portugal.

Plaintiffs contend that conduct of the defendants indicate that they do not really find a United States forum inconvenient.

TAP made no motion for dismissal grounded on *forum non conveniens,* merely supporting the dismissal order once it had been made. In its motion to dismiss 79–C–2498 for lack of subject matter jurisdiction, TAP asked that if the complaint were not dismissed, the Boskoff claims against TAP could be severed, and stayed pending the outcome of an action brought by the Boskoff plaintiffs against TAP in a New York state court. In the New York case, TAP ultimately · moved for dismissal on the ground of *forum non conveniens,* but did not do so until three years after it had filed its answer. That motion has been denied.

Several of the manufacturer defendants have failed to assert the *forum non conveniens* claim in a related action. *Miranda v. TAP* was filed in an Illinois state court, removed to the Northern District of Illinois by TAP, and eventually remanded to the Illinois court on motion of defendant Crane.

Before remand TAP moved for transfer to the Southern District of New York for MDL purposes. Boeing, Bendix, and Goodrich all supported the transfer. Crane/Hydro-Aire opposed the transfer, suggesting, perhaps only for MDL purposes, that "if anything, the respective issue should require the consolidation of the cases into Illinois rather than New York."

The Judge did not expressly refer to these facts.

It appears there will be considerable hardship for plaintiffs in bringing an action in Portugal. The greater deference due the American plaintiffs adds weight to this point.

We have already indicated the substantial fees which a plaintiff in Portugal must pay in advance. Portuguese attorneys are not permitted to accept a case on a contingent fee arrangement. Plaintiffs will be presenting a very considerable amount of documentary proof, and will be required to obtain translations. Expense alone might well deprive them, in reality, of an alternative forum in Portugal.

In addition, the plaintiffs presented considerable material tending to substantiate their claim that several manufacturer defendants were aware that the data in use concerning the required stopping distance for the 727 aircraft understated the additional requirement for wet runways. They argue persuasively that this demonstrates their special need for discovery under federal rules in order to make an adequate presentation of their claims.

The claims of financial hardship and need for discovery were not dealt with in the decision of the court.

*IV. Public Interest Factors*

The Judge asserted

there is no doubt that the docket of this court is quite congested. In addition, it appears that these suits would be tried to a jury to whose community this litigation bears no relation.... The fact that the aircraft was manufactured in the United States does not make the accident, involving a Portuguese airline, an airport in Portugal, predominantly Portuguese plaintiffs and Portuguese witnesses, any less a matter of local Portuguese interest.

All defendants do business in Illinois, but except for that fact, the activity out of which this lawsuit arose had no connection with Illinois. The flight involved was between points in Portugal; none of the components was manufactured in Illinois and the aircraft was not assembled here. The plaintiffs have no connection with Illinois.

The Judge did not advert to the substantive law to be applied in the case.

If the case were tried in the Northern District of Illinois, Illinois choice of law rules would apply. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *In Re Air Crash Disaster Near Chicago, Illinois on May 25, 1981,* 644 F.2d 594, 610 (7th Cir.1981). The Illinois courts apply the "most significant relationship" test of the Restatement (Second) of Conflict of Law. *Id.* at 611; *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1973). Under the circumstances Illinois substantive law might well not be applied to any issue. Portuguese law would surely be applicable to many. "[P]ublic interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'" *Reyno,* 454 U.S. at 251, 102 S.Ct. at 262.

As between the Northern District of Illinois and the courts of Portugal, the public interest factors favor the latter. Certain of the public interest factors which are adverse to the Illinois forum, however, would be obviated by a transfer to the Western District of Washington. Boeing's relevant documents are in Washington. The design, manufacture, assembly, testing, and sale of the aircraft occurred in Washington. Washington law might well be applicable to some of the issues. In that sense the Western District of Washington is a more convenient forum than the Northern District of Illinois.

*V. Summary*

 We have analyzed the two cases as if they were one. Plaintiffs started them as one, although they separated them in order to defeat a jurisdictional challenge. It would be sensible to try them together, and it seems artificial to consider them separately.

The majority of plaintiffs are Portuguese, and many others reside outside the United States. The Boskoff decedents (American) were a tiny minority of the passengers, and the five Boskoff plaintiffs a tiny minority of the plaintiffs. They have an action pending against TAP and Boeing in a New York state court.

The public interest factors weigh against committing the judicial resources of the Northern District of Illinois to these cases.

With respect to private interest factors, we acknowledge those addressed by the district court. With respect to the convenience of proof of the details of the occurrence, we note the weakness of the showing made by defendants as to the needed evidence available more conveniently in Portugal. The court failed to consider the conduct of defendant TAP in this case and the conduct of all defendants in other cases which cast doubt on their conviction that litigation in Portugal would be more convenient. It failed to consider plaintiffs' assertion of need for discovery under federal rules with respect to the manufacturer defendants. It failed to address the financial burden which would be imposed, particularly on the American plaintiffs, in bringing action in Portugal.

We recognize our obligation not to substitute our own judgment for that of the district court. *Reyno,* 454 U.S. at 257, 102 S.Ct. at 266. We do, however, find a clear abuse of discretion in granting dismissal without including in the weighing process the matters omitted by the district court, and just referred to. In particular, dismissal without justifying the financial burden imposed on the American plaintiffs in an action for alleged wrongdoing of American manufacturers is deemed such an abuse.

The judgment appealed from is reversed and the cause remanded for further proceedings, including consideration of the motion to transfer the actions to the Western District of Washington.