Steven Thomas DOWLING, et al., Plaintiffs-Appellants,

v.

RICHARDSON–MERRELL, INC., Defendant-Appellee.

Nos. 82–3617 to 82–3628.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1983.

Decided Feb. 15, 1984.

Stanley M. Chesley, argued, Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio, George Kokus, argued (Lead Counsel), Cohen & Kokus, Miami, Fla., Lee S. Goldsmith, New York City, for plaintiffs-appellants in all cases.

Arnold R. Ginsberg, Horton, Perse & Ginsberg, Miami, Fla., for plaintiff-appellant in No. 82–3617.

Davis, Polk & Wardwell, New York City, for defendant-appellee in all cases.

Peter N. Perretti, argued, Riker, Danzig, Scherer & Hyland, Morristown, N.J., Kent

W. Seifried, Frank C. Woodside, III, (Lead Counsel), Christine L. McBroom, Dinsmore & Shohl, Cincinnati, Ohio, for defendant-appellee in No. 82–3617.

Before LIVELY, Chief Circuit Judge, KRUPANSKY, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.*

LIVELY, Chief Circuit Judge.

The district court dismissed twelve actions brought by foreign nationals against an American drug manufacturer on grounds of *forum non conveniens.* The appeals were consolidated by order of this court and present the single issue of whether the district court clearly abused its discretion in dismissing the actions and in denying a motion for reconsideration.

## I.

### A.

The complaints were filed originally in the United States District Court for the Southern District of New York. Except for names and dates the complaints are identical. All are based on diversity jurisdiction and each plaintiff is described as "a citizen and/or subject of Great Britain." The defendant, Richardson-Merrell, Inc., was sued as a Delaware corporation with its international division in New York State. After the defendant filed its answers and motions to dismiss on *forum non conveniens* grounds the plaintiffs filed a motion to transfer the actions to the Southern District of Ohio. Noting that the defendant had moved its principal office to Cincinnati, the district court transferred the twelve cases to the Southern District of Ohio, stipulating that the pending motions to dismiss might be renewed in that court.

Each complaint sought damages on behalf of an infant plaintiff alleged to have suffered serious birth defects as the result of its mother's ingestion of the drug Debendox during pregnancy, and on behalf of the parents. Debendox was alleged to be iden-

tical to the drug Bendectin which the defendant manufactured and marketed within the United States. Each complaint charged that the planning, manufacturing, animal testing, primary human studies and monitoring of Bendectin took place in the United States. After introducing Bendectin in the United States in 1957, according to the complaints, "[t]he formulation was marketed in Great Britain beginning in 1968 under the trade name DEBENDOX." The plaintiffs based their claims for damages on the assertion that findings from animal testing indicated that Bendectin caused dose-related increases in the number of deformities observed in offspring of test animals and that these findings were concealed "from the worldwide medical community and the National Health Authorities in Great Britain." In addition to the claims of fraud and misrepresentation the complaints contained counts based on breach of implied and express warranty, strict liability in tort and negligence. Compensatory and punitive damages are sought.

The answers of the defendant denied all claims of wrongful or negligent conduct while admitting that its wholly owned foreign corporation marketed Debendox in Great Britain. The answers pled as an affirmative defense that the district court was not a convenient forum for prosecution of the actions. The answers also contained notices that the defendant intended to rely on applicable law of the United Kingdom, stating that the plaintiffs were citizens or subjects of the United Kingdom, that Debendox was prescribed for the mothers by physicians in the United Kingdom and that the infant plaintiffs were born there.

### B.

The defendant renewed its motions to dismiss in the transferee court. An appendix accompanying the renewed motion contained three affidavits. One, by an official of the defendant, merely recited changes in

---

* The Honorable Thomas E. Fairchild, Senior Circuit Judge, U.S. Court of Appeals for the Sev- enth Circuit, sitting by designation.

its corporate structure and in the location of its headquarters. Another, by an English solicitor, contained an opinion that the infant plaintiffs could state good causes of action under various theories of English law. ("Thus, there is available in this country a good and well tried means of redress and remedy in respect of the matters of which complaint is made.") The third affidavit was that of the Managing Director of Merrell Pharmaceuticals, Ltd. of England. The affiant made the following statements which remain uncontradicted: Debendox had at all times been manufactured, sold and distributed in the United Kingdom by companies incorporated under the Companies Acts of England and Wales and governed by English law. Until 1979 Debendox was manufactured by Boots Pure Drug Company, Ltd., an independent corporation and since that time by a subsidiary of Merrell Pharmaceuticals, Ltd. The sale, promotion and distribution of Debendox have been carried out by Merrell Pharmaceuticals, Ltd. and its English subsidiaries. The product licenses for Debendox were issued by the Department of Health and Social Security of the United Kingdom to the English companies. No license was issued to the American defendant, Richardson-Merrell, Inc. Debendox has been manufactured and marketed in accordance with existing laws of England. The English Committee on the Safety of Medicines has not required or requested any change in the formulation of Debendox since its introduction in 1958.

The plaintiffs filed an affidavit by one of their attorneys in opposition to the defendant's motion to dismiss. This affidavit did not contradict any of the factual statements in the defendant's affidavits. It "took issue" with the opinion of the English solicitor, arguing that the plaintiffs could not bring suit against the defendant in the United Kingdom without its consent. The document is actually more a brief in opposition to the motion than an affidavit. Following transfer the plaintiffs filed a motion requesting leave to amend their complaints and both sides filed briefs on this motion.

### C.

On August 24, 1982 the district court issued an order granting the defendant's motion to dismiss on *forum non conveniens* grounds. *See In re Richardson-Merrell, Inc.*, 545 F.Supp. 1130 (S.D.Ohio 1982). Dismissal was subject to the following conditions:

(1) defendant's consent to suit and acceptance of process in the United Kingdom in any civil actions filed by plaintiffs on their claims;

(2) defendant's agreement to make available any documents or witnesses within its control that are necessary for fair adjudication of any action brought in the United Kingdom by the plaintiffs on their claims;

(3) defendant's consent to pay judgment or judgments which may be rendered against it in the United Kingdom in any civil action brought by plaintiffs on their claims; and

(4) defendant's agreement to waive any statute of limitations defense that did not exist prior to the institution of any of these actions.

*Id.* at 1137. The defendant accepted all four conditions.

Plaintiffs filed a motion for reconsideration in which they stated that they had understood their response to the motion to dismiss would not be due until after the court had ruled on their motion to amend the complaints. They filed a memorandum and affidavits in support of the motion for reconsideration. One affidavit was made by an attorney for the plaintiffs. In this affidavit the attorney offered his opinion, based on the trial of a Bendectin case in Florida, of the "private factors" to be considered in disposing of the *forum non conveniens* motion. He further stated that one of the principal witnesses on the marketing of Debendox in Britain was now a resident of Connecticut and that in his opinion at least 80 per cent of the trial testimony of Bendectin/Debendox cases would be based upon witnesses and documents located in the United States. He also offered his

opinion that "the 'forum' available in England is more 'form' than substance." He attached a list of witnesses, with addresses, who testified live or by deposition in the Florida trial.

The second affidavit was that of a Scottish solicitor who had examined the pleadings in the American cases and the affidavit of the English solicitor in support of the defendant's motion to dismiss. The affiant pointed out differences between the laws of England and Scotland. He concluded that there were questions about the jurisdiction of Scottish courts and the only way to avoid this issue "would be if Richardson Merrell prorogated the jurisdiction of the Scottish Courts, that is to say accepted their jurisdiction without question." The affiant stated that pursuit of the claims in Scottish courts would be expensive and duplicative of efforts already made in the United States. He opined that the Scottish plaintiffs could proceed in English courts, but this would add further to their litigation expenses, and might result in loss of their claims under Scottish limitations statutes if the English courts should ultimately refuse to hear their claims.

The relevance of Scottish law arises from the fact that three of the infant plaintiffs and their parents are Scottish subjects. Though at an earlier place in their memorandum the plaintiffs stated that they "do not deny that another forum exists [ ]," in discussing the Scottish plaintiffs they stated that a "question arises as to whether there is an alternative forum for those three cases."

Subsequently the plaintiffs filed two additional affidavits, one by an English professor of law and the other by an English solicitor admitted to practice in New York. Both referred to disadvantages the plaintiffs might suffer if required to sue in England or Scotland. Much of the content of these affidavits related to the substantive law of England.

The district court denied the plaintiffs' motions for reconsideration for the reasons stated in its previous order, and these appeals ensued.

## II.

We are guided in our decision by three opinions of the Supreme Court. In *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Court reviewed the history and development of the doctrine of *forum non conveniens*. Without attempting to catalogue all the circumstances which might lead a court to grant or deny a motion to dismiss on these grounds, the Court identified some factors which must be considered. The doctrine presupposes the availability of at least two forums in which the defendant may be sued; the defendant seeking a *forum non conveniens* dismissal must identify an alternative forum. Once the existence of such a forum is established the trial court must consider the private interests of the litigants and factors of public interest in determining relative convenience of the forum chosen by the plaintiff as opposed to the available alternative forum. Among the important private interest considerations are "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508, 67 S.Ct. at 843. The court must also consider problems in enforcing a judgment if one is obtained and relative advantages and obstacles to a fair trial, if any. "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* The Court also identified relevant public interest factors: administrative difficulties of courts with congested dockets; the burden of jury duty on people of a community having no connection with the litigation; desirability of holding a trial near those most affected by it ("There is a local interest in having localized controversies decided at home."); appropriateness of holding a trial in a diversity case in a court which is familiar with governing law. *Id.* at 508–09, 67 S.Ct. at 843.

Reversing the court of appeals, the Supreme Court in *Gilbert* found that the district court had not abused its discretion in granting the defendant's motion to dismiss on grounds of *forum non conveniens.* The Court found that the reasons advanced for convenience to the plaintiff of proceeding in the chosen forum were not valid. On the other hand, the availability of the witnesses in the alternative forum, together with the proof of local conditions required and the application of the law of that jurisdiction supported the trial court's finding that the forum chosen by the plaintiff was in fact not the more convenient one. A similar conclusion was reached by the Court in *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947), decided the same day as *Gilbert.* Though *Koster* is concerned to a large extent with the special problems which arise in applying the doctrine of *forum non conveniens* to shareholders' derivative actions, its teachings are consistent with those of *Gilbert.* While ordinarily a plaintiff will not be deprived of his choice of suing in his home forum, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Id.* at 527, 67 S.Ct. at 833.

In *Gilbert* and *Koster* the plaintiffs were residents of the United States and the question was which of two federal district courts was the more convenient forum. In *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), the Supreme Court decided a case more nearly like the present one. There the plaintiffs were representatives of the estates of Scottish citizens killed in an air crash in Scotland. The plane had been manufactured in Pennsylvania by the American defendant. It was registered in Great Britain, owned and maintained by a British company, was being operated by a Scottish air taxi service at the time of the crash, and was subject to Scottish air traffic control. The wreckage was stored in a hangar in England.

Wrongful death actions were filed by the estates of the Scottish passengers in California and eventually disposed of by the United States District Court for the Middle District of Pennsylvania. After finding that an alternative forum existed in Scotland the district court dismissed on *forum non conveniens* grounds. The court of appeals reversed, finding that the district court had abused its discretion in applying *Gilbert* and that dismissal is automatically barred where the law of the alternative forum is less favorable to the plaintiff than the law of the forum which the plaintiff has chosen. The Supreme Court, in turn, reversed the court of appeals, holding that the possibility that the law of the alternative forum will be less favorable to the plaintiff is not sufficient, alone, to bar dismissal. *Id.* at 247, 102 S.Ct. at 261. The flexibility required in application of *forum non conveniens* is lost if any factor is given undue weight. "In fact, if conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless." *Id.* at 250, 102 S.Ct. at 263. After discussing the practical problems encountered in giving consideration to change of substantive law (the need to interpret and compare foreign law; congestion in United States courts because of attractiveness of some features of American law, *e.g.* strict liability), the Court defined the circumstances under which this factor may be considered significant.

> Of course, if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice.

*Id.* at 254, 102 S.Ct. at 265 (footnote omitted).

The Court in *Piper Aircraft* also made it clear that foreign plaintiffs are not entitled to the same presumption in favor of their chosen forum as adheres to the choice of plaintiffs who are citizens or residents of the United States. "Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Id.* at 256, 102 S.Ct. at 266

(footnote omitted). While it is reasonable to assume that a plaintiff's home forum will be convenient, when the plaintiff is an alien it is less reasonable to assume that his or her choice of forum will be convenient.

Recognizing that the standard of review is clear abuse of discretion, the Supreme Court then reviewed the private interest and public interest factors considered by the district court in *Piper Aircraft* and concluded no abuse had occurred. With respect to private interest factors the Court held that where it is shown that trial in the plaintiff's chosen forum would be burdensome for the defendant, this finding is sufficient to support a *forum non conveniens* dismissal. With respect to public interest factors the Court found that the strong interest of Scotland in the litigation far outweighed any American interest in ensuring that American products are not defective.

### III.

### A.

On appeal to this court the plaintiffs argue that the district court clearly abused its discretion by not giving proper consideration to various private and public interest factors as required by *Gilbert*. They also contend that the district court misapplied *Piper Aircraft,* by giving no consideration at all to a change of substantive law. In fact, they claim, the available remedies in courts of the United Kingdom are so clearly inadequate or unsatisfactory that there is no remedy if they are required to sue in that jurisdiction. An alternative argument is that the first prerequisite for a *forum non conveniens* dismissal—the availability of an alternative forum—does not exist for the Scottish plaintiffs. The plaintiffs contend that the district court created an alternative forum which did not exist by imposing conditions for dismissal.

The plaintiffs assert that the district court also abused its discretion by denying their motion for reconsideration. After deciding the renewed motion to dismiss without waiting for their response, the district court denied their motion for reconsideration without referring to the affidavits filed with that motion. The statements regarding English and Scottish law contained in these affidavits required the district court to reverse its previous order, according to the plaintiffs.

### B.

■ An examination of the original order granting the motion to dismiss disproves the claim that the district court failed to consider private and public interest factors. Those factors pertinent to this case were considered and a balancing of interests was performed. The plaintiffs point out that many Bendectin cases will be tried in the Southern District of Ohio and that they should not be required to duplicate their efforts in that forum by proceeding in a second action in the United Kingdom. Though presented as an argument that the balancing of private interests favors their chosen forum, this contention necessarily implicates public interests under the facts of these cases. The fact that more than 100 cases against the defendant for alleged injuries from Bendectin were pending in the court below for multi-district pretrial discovery when it dismissed the twelve alien cases is not significant. Nor is it significant that a trial is scheduled in the Southern District of Ohio in June 1984 involving more than 200 Bendectin cases which were either filed in the district or transferred there. The Bendectin cases involve claims by American plaintiffs based on the use of a drug manufactured in this country after approval by the Food and Drug Administration, and advertised, sold and dispensed in the United States. The twelve alien cases would require the district court to apply foreign law, a complicating factor not present in the domestic cases set for trial. It was not an abuse of discretion to consider this public interest factor in disposing of the plaintiffs' private interest argument concerning convenience to the parties and duplication of effort.

■ The plaintiffs also contend that the defendant failed to establish that Ohio was

an inconvenient forum. One of their affidavits listed the witnesses called and deposed in a Bendectin case tried in Florida. Most of these witnesses were residents of the United States. The plaintiffs appear to imply that the district court should have required the defendant to produce a list of its witnesses in these Debendox cases to show that they would be available for a trial in Ohio and then to decide the motion on the relative availability of witnesses in the two forums. The Supreme Court held in *Piper Aircraft* that a defendant is not required to detail all the witnesses likely to be used in a case in order to establish inconvenience. It is sufficient if the defendant provides enough information to enable the trial court to balance the parties' interests. 454 U.S. at 258, 102 S.Ct. at 267.

■ While finding that private interest factors existed which favored both forums, the court concluded "on balance" that they favored a British forum. *In re Richardson-Merrell, Inc.,* 454 F.Supp. at 1134. The record supports this conclusion.

The decision was not even close with respect to public interest factors. The district court wrote:

This action involves the safety of drugs manufactured in the United Kingdom and sold to its citizens pursuant to licenses issued by that government. The interest of the United Kingdom is overwhelmingly apparent. New York, and Ohio for that matter, have a minimal interest in the safety of products which are manufactured, regulated and sold abroad by foreign entities, even though the development or testing occurred in this country.[6] At this juncture, then, it appears virtually certain that the substantive tort law of the United Kingdom will govern these actions. This Court's unfamiliarity with the foreign law which will govern these actions supports dismissal on the basis of *forum non conveniens. Piper Aircraft Co. v. Reyno, supra* [454 U.S.] at [260], 102 S.Ct. at 268; *Calavo Growers of California v. Belgium,* 632 F.2d 963, 967 (2nd Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981).

[6] In *Reyno,* which involved an American manufacturer, the Supreme Court noted:

"Respondent argues that American citizens have an interest in insuring that American manufacturers are deterred from producing defective products, and that additional deterrents might be obtained if Piper and Hartzell were tried in the United States where they could be sued on the basis of both negligence and strict liability. However, the incremental deterrents that would be gained if this trial were held in an American court is likely to be insignificant." [454] U.S. at [260], 102 S.Ct. at 268.

*Id.* at 1135–36. The court based its public interest conclusion on valid considerations.

**C.**

■ The argument that the district court abused its discretion in denying the motion for reconsideration breaks down upon close examination of the affidavits relied upon by the plaintiffs. Based on the filings in the New York court prior to transfer the district judge was able to anticipate most of the arguments of the plaintiffs in opposition to the motion to dismiss. The affidavits filed with the motion for reconsideration introduced only one new contention— that no alternative forum existed for the Scottish plaintiffs. However, the affidavits did not establish the non-existence of an alternative forum. They merely presented opinions of counsel that litigation in England and Scotland might be expensive and more difficult for the plaintiffs and that certain theories of tort recovery are not recognized in the United Kingdom. Just as they failed to establish the non-existence of an alternative forum, these affidavits did not support a finding that the "remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all...." *Piper Aircraft,* 454 U.S. at 254, 102 S.Ct. at 265. The argument that the district court created an alternative forum is likewise unavailing. Dismissal subject to conditions similar to those imposed in the present cases was approved in *Piper Aircraft.* The conditions which the district court imposed will make the defendant subject to suit in the United Kingdom at the present time thus overcoming the claimed jurisdictional and limitations problems. It is suggested by the

plaintiffs that there may be no cause of action for prenatal injuries in the United Kingdom. All of the infant English plaintiffs except Dodsworth and Etherington clearly have causes of action under the Congenital Disabilities Act of 1976. If the courts of the United Kingdom should hold that Dodsworth and Etherington or the infant Scottish plaintiffs have no cause of action for prenatal injuries, upon final dismissal of their claims on this ground by a court of the United Kingdom, any of these plaintiffs so dismissed shall have the right to reinstate his or her action in the Southern District of Ohio.

### D.

The plaintiffs have cited several cases from lower federal courts where dismissal was not granted. We have examined these decisions, but do not believe they require extended discussion in view of our conclusion that the district court faithfully applied the holdings of the Supreme Court in considering the motions in these cases. We do note, however, a distinguishing feature of *Macedo v. Boeing Co.,* 693 F.2d 683 (7th Cir.1982), a post-*Piper Aircraft* case, where dismissal was denied. In *Macedo* many of the plaintiffs were foreign nationals, but six of them were American citizens. This fact was emphasized repeatedly in discussing the private interest factors present in the case. *See, e.g., id.* at 688 ("It seems to us that as to the Boskoff [American] plaintiffs, at least, the plaintiffs' choice is entitled to considerable deference...."); *id.* at 690 ("The greater deference due the American plaintiffs adds weight to this point."); *id.* at 691 ("In particular, dismissal without justifying the financial burden imposed on the American plaintiffs in an action for alleged wrongdoing of American manufacturers is ... an abuse."). None of these considerations apply to the present cases where all the plaintiffs are foreign nationals.

### CONCLUSION

Each application of the doctrine of *forum non conveniens* requires considera-

tion of the factors shown to be relevant to the decision in the particular case. The factual setting in each case prescribes the factors which are relevant. When a trial court considers both public and private interest factors and engages in a balancing of interests, its decision must be upheld in the absence of a clear abuse of discretion. *Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. at 266; *Koster,* 330 U.S. at 531, 67 S.Ct. at 835; *Gilbert,* 330 U.S. at 511–12, 67 S.Ct. at 844. We have considered all of the plaintiffs' contentions, including those raised at oral argument and in post-argument filings, and find no such abuse in the present cases.

The interest of the United Kingdom in this litigation is great. The drug was manufactured under a British license by British companies and was marketed and prescribed in the United Kingdom. The alleged injuries took place in England and Scotland and the plaintiffs are citizens and residents of those countries. When a regulated industry, such as pharmaceuticals in this case and passenger aircraft operations in *Piper Aircraft,* is involved, the country where the injury occurs has a particularly strong interest in product liability litigation. This interest is highlighted in the present cases by the plaintiffs' charge that the defendant concealed adverse test results from the national health authorities in Great Britain. Though no single factor should be determinative in ruling on a *forum non conveniens* motion, the nature of the product and its status as regulated or not must be considered.

The judgment of the district court is affirmed with the addition of the fifth condition set forth in Part III, C of this opinion.