**RIDLEY BAGEL, LTD., Plaintiff,**

v.

**KELLOGG CO., et al, Defendants.**

No. 01–73955.

United States District Court,
E.D. Michigan,
Southern Division.

July 17, 2002.

Gerard Mantese (P34424), Mark C. Rossman (P63034), Mantese and Associates, PC, Troy, for Plaintiff.

Dean N. Panos, Gregory M. Boyle, Thomas Monroe, Jennifer Vance, Jenner & Block, LLC, Chicago, IL, for Defendants.

John J. Conway (P56659), John J. Conway, PC, Detroit, for Plaintiff.

Carl von Ende (P21867), Donald W. Myers (P58348), Miller Canfield, Detroit, for Defendants.

## *ORDER DENYING MOTION TO DISMISS WITHOUT PREJUDICE*

ROBERTS, District Judge.

## I. INTRODUCTION

This action is before the Court on Defendants' Motion to Dismiss Under the Doctrine of *Forum Non Conveniens.* Defendants are a Delaware corporation whose principal place of business is Battle Creek, Michigan, and two individuals, one domiciled in Battle Creek, Michigan, and the other in Seattle, Washington. Plaintiff is an English corporation with its headquarters in Middlesex, England. Defendants argue that this action should be dismissed because England provides an adequate alternative forum for this action and because the private interests of the

parties and the relevant factors of public interest weigh in favor of having this action brought before the English courts. Plaintiff argues that the relevant factors weigh in favor of having this action remain in federal court in Michigan. While foreign Plaintiffs are not entitled to the same presumption in favor of their chosen forum as are U.S. citizens, nonetheless Defendants have failed to demonstrate that Plaintiff's choice of forum should not be given deference. Accordingly, the motion is dismissed, but without prejudice.

## II. BACKGROUND

In 1997, Plaintiff Ridley Bagels Ltd ("Ridley") and Lender's Bakery Ltd. ("Lender's") entered into a joint venture agreement to operate Garden City Bakery Ltd ("Garden City") in England. Lender's is a wholly owned subsidiary of Kellogg UK Holding Company Ltd ("Kellogg UK"), which in turn is a wholly owned subsidiary of Defendant Kellogg Co. ("Kellogg"). Kellogg had recently acquired Lender's Bagels in the United States from Kraft foods. In an effort to enter into the convenience breakfast foods market in Europe, Kellogg and/or Kellogg U.K.[1] began negotiations with Ridley, which owned an advanced bagel producing plant in England. Ridley was represented by Kyriacos Kyriacous, Jim Clifford, John Allan, Ilan Khalani, Eitan Khalani, and Andreas Liveras. Lender's Ltd. was represented by John Gregory, Ridley's attorney Helen Stroud, as well as Defendants Roling and Baynes. These negotiations took place in England. The parties eventually reached an agreement whereby Ridley and Lenders Ltd. would operate a joint venture.

Under the agreement, Ridley surrendered its entire bagel-making operation, including its recipes, manufacturing equipment, employees, and factory to the joint venture in return for 49 percent of the joint venture's shares and £400,00. Lender's Ltd received the majority 51 percent of the joint venture's shares, and was responsible for marketing, advertising, and promoting bagel products throughout the U.K. The agreement also contains the following clause:

> This Deed shall be governed by and construed in accordance with English Law and the Shareholders submit to the "non-exclusive" jurisdiction of the English Courts for the purpose of enforcing any claim arising hereunder.

Def. Mot., Exb. F ¶ 30.

The parties dispute the role of Kellogg's various subsidiaries in the negotiations. Ridley alleges that the documentation surrounding the venture was drafted by, approved by, or written on behalf of Kellogg. Ridley alleges that Kellogg, not Lender's Ltd or any of its other subsidiaries, handled all of the negotiations. Ridley further alleges that Defendant Baynes represented that the Kellogg Chairman and CEO would have to approve every agreement surrounding the joint venture. In addition, Ridley alleges that Defendant's Baynes and Roling, both directors of Lender's Ltd. and officer's of Kellogg,[2] represented that they were in continuous contact with Kellogg's Chairman & CEO and that he was directing their activities in England. Ridley further alleges that Kellogg, through Baynes and Roling, promised that it would use the Kellogg/Lender's

---

1. The parties dispute whether Kellogg U.S. or Kellogg U.K. played the primary role in these negotiations.

2. It is unclear whether Rolings and Baynes held their positions in both Lenders Ltd and Kellogg simultaneously. It addition, it is un-

clear whether they worked for Kellogg or Kellogg U.K. Defendants have attached two affidavits from Kellogg U.K. officers stating the both Rolings and Baynes were employees of subsidiaries of Kellogg U.K. and did not work directly for Kellogg in Battle Creek, MI. Def. Rep., Exh. I, J.

name through the life of the joint venture, that it would invest $15 million to support the joint venture through marketing and advertising, and that it would aggressively market the bagel products using its own "branding continuum." Further, Ridley has attached several exhibits to its Response purportedly indicating the Kellogg, and not Lender's Ltd., was the real party in interest during these negotiations. See Pl. Res., Exh. 1–9. One of the documents Plaintiff provided following oral argument is an agreement entered into by Plaintiff, Kellogg, and Lender's Ltd. The agreement is entitled "Brand Name, Trademark, Technical Data, Information and Assistance Agreement," and provides:

> This Agreement shall be governed and construed and the legal relationship between the parties hereto shall be determined in accordance with the laws of the State of Michigan, USA, without regard to the conflict of laws principles thereof. Each of the parties to this Agreement submits to the exclusive jurisdiction of the courts of the State of Michigan and of the United States of America for the Western District of Michigan.

> Supp. Doc, Exh. 1, Art. XII, subparagraph (I).

Defendants simply point out that Ridley and Lender's Ltd. were the only parties to the Joint Venture Agreement. In addition, Defendants have attached an affidavit to their Reply that indicates the exhibits Ridley has submitted to show Kellogg's role in the negotiations are actually documents of Kellogg's various U.K. subsidiaries. Def. Rep., Exh. J ¶ 4.

The Garden City joint venture operated for approximately two years. After Lender's U.S. began experiencing difficulties, Kellogg allegedly embarked upon an exit strategy from the joint venture so that it could sell Lender's Bagels (U.S.) to Aurora Foods, without complications arising from the use of the "Lender's" name in the U.K.

As a result, the profitable joint venture was allegedly destroyed. Ridley then filed suit in this Court alleging: Piercing the Corporate Veil; Breach of Contract; Negligent Performance of Contract; Promissory Estoppel; Breach of Fiduciary Duty; Fraud and Fraudulent Concealment; Tortious Interference With Contract; Tortious Interference With Advantageous Business Relationship; Civil Conspiracy; and Accounting. After the Court entered an order requiring Ridley to show cause why the case should not be dismissed for lack of jurisdiction, Defendants filed the present motion.

## III. ANALYSIS

In reviewing Defendants' Motion to Dismiss Under the Doctrine of *Forum Non Conveniens,* the Court must determine:

> (1) whether defendant has established that there is an adequate alternative forum; and

> (2) whether the private interests of the litigants and factors of public interest in plaintiff's chosen forum, verses the alternative forum weigh in favor of dismissal.

See *Lockman Foundation v. Evangelical Alliance Mission,* 930 F.2d 764, 767 (9th Cir.1991).

### A. Adequate Alternative Forum

■ In considering whether the alternative forum offered by Defendant is adequate, the Court should not ordinarily give conclusive or even substantial weight to whether any change in the substantive law will be less favorable to Plaintiff. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 247, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). However, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable change in law may be given substantial weight; the district court

may conclude that dismissal would not be in the interests of justice." *Id.* at 255, 102 S.Ct. 252. The Court elaborated on this point in a footnote:

> At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction. *Gilbert,* 330 U.S., at 506–507, 67 S.Ct., at 842. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute. *Cf. Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,* 78 F.R.D. 445 (Del.1978) (court refuses to dismiss, where alternative forum is Ecuador, it is unclear whether Ecuadorean tribunal will hear the case, and there is no generally codified Ecuadorean legal remedy for the unjust enrichment and tort claims asserted).

*Id.* at 255, n. 22, 102 S.Ct. 252.

Based on the applicable law, the Court finds that England provides an adequate alternative forum for this action. Both parties have submitted affidavits of solicitors of the Supreme Court of England and Wales on this issue. Def. Mot. Exh. B and Rep. Exh. K; Pl. Res. Exh. 17. Based on the briefs and affidavits, there is no dispute that Defendants are 'amenable to process' in England. The High Court of England and Wales would have jurisdiction over Plaintiff because it is an English corporation. In addition, the High Court would likely be able to exercise its jurisdiction over Defendants under its usual rules of jurisdiction and procedure. Further, Defendants have filed affidavits stating that they expressly consent to the jurisdiction of English courts over this matter. Pl. Mot, Exh. C, D, E. Consent in this manner is sufficient to satisfy the requirement that Defendants be 'amenable to process' in the alternative jurisdiction. See, e.g. *Stewart v. Dow Chemical Co.,* 865 F.2d 103, 106–7 (6th Cir.1989) (holding dismissal appropriate under doctrine of *forum non convenien* s based on defendant's consent to certain conditions). Because neither Plaintiff nor the affidavit of its solicitor disputes this issue, the Court finds that Defendants would be amenable to process in England.

Plaintiff does contend, however, that England provides an inadequate forum because it would be unable to pursue this particular action in the English courts. The only support for Plaintiff's position in its solicitor's affidavit are differences between the U.S. and U.K. procedures on discovery ("disclosure" in the U.K.), witness depositions, the availability of a jury trial, litigation costs, and availability of certain damages. In addition, the affidavit suggests that the English procedure for 'security for costs' and the time-scale for a trial could effectively bar this action. Finally, Plaintiff's argues that its inability to hire counsel to work on a contingency fee basis would effectively bar this action due to its financial condition. In Defendants' Reply, their solicitor provides another affidavit addressing these issues. Based on a comparison of the affidavits, the Court is persuaded that the alleged differences in the U.S. and U.K. procedures fall well short of the finding necessary to conclude that Plaintiff would be denied a satisfactory remedy in the English courts.

First, while the discovery procedures (including witness depositions) vary between the two fora, the differences would not bar this action (or even necessarily hinder it) from proceeding through the English courts. Second, the fact that liti-

gation costs in England would be somewhat higher for Plaintiff does not mean that the English courts fail to provide an inadequate alternative forum. See *Dowling v. Richardson–Merrell, Inc.,* 727 F.2d 608, 615 (6th Cir.1984). This is also true of the security for costs provision, although there is some indication that En-glish courts would refuse Defendants' re-quest that Plaintiff pay security for costs, if the effect of the order would be to stifle Plaintiff's action. See Def. Rep., Exh. K ¶ 15.

Third, courts have declined to give de-terminative weight to the fact that the alternative forum does not provide a con-tingency fee system. See *Coakes v. Ara-bian American Oil Co.,* 831 F.2d 572, 575 (5th Cir.1987). In any event, there is some indication in the affidavits that En-glish solicitors will indeed take cases on a "no win, no fee" basis, and that English barristers are not prevented from doing so by their professional rules. See Def. Rep., Exh. K ¶¶ 22–23. Third, the unfavorable change in substantive law regarding dam-ages does not provide a basis for dismiss-ing this action. The affidavits of Plaintiff's and Defendants' solicitors establish that English courts rarely award exemplary or aggravated damages in the commercial context. Instead, the basic principle in English courts is that damages are com-pensatory in nature. The Court is not persuaded that this difference renders Plaintiff's available remedy "so clearly in-adequate or unsatisfactory" that this change in substantive law should be given substantial weight when determining the adequacy of the alternative forum. *Piper,* 454 U.S. at 255, 102 S.Ct. 252.

Finally, the solicitor's affidavits dispute how soon this action would likely come to trial; Defendants' says 18 months, Plain-tiff's says it could possibly be 3 years. However, only the former alleged that he had spoken with court officials in deter-mining his estimate. In any event, it is not clear that a three year trial date would render the English forum inadequate. Thus, based on the affidavits, the English courts provide an adequate, alternative fo-rum.

Plaintiff's main contention in its brief is that in the commercial context, suits by foreign plaintiffs against domestic defen-dants are commonplace in federal courts. While this may be true, it provides little guidance in determining whether English courts provide an adequate alternative, which is the only question at issue at this stage of the analysis. Further, although Plaintiff challenges the statement of De-fendants' solicitor that all of Plaintiff's causes of action would be recognized in English courts, Plaintiff has not provided any evidence to the contrary.

For these reasons, the Court finds that Defendant has established that English courts would provide an adequate alterna-tive forum for this action.

### B. Private Interests

██ The relevant private factors the court must consider are:

(1) relative ease of access to sources of proof;

(2) availability of compulsory process for attendance of unwilling witnesses;

(3) possible problems of enforcing a judgment if one is obtained; and,

(4) all other practical problems that may impede an easy, expeditious and inexpensive trial.

*Faber–Plast GmbH v. Kleinert,* 997 F.Supp. 846, 847–48 (E.D.Mich.1998) cit-ing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

Defendants argue that the relevant pri-vate factors support dismissal. They con-tend that the primary witnesses to the

alleged oral promises during the negotiations of the joint venture deed, critical to Plaintiff's breach of contract and promissory estoppel claims, reside in England, except for Roling and Baynes who have consented to English jurisdiction and process. Second, Plaintiff's breach of fiduciary duty claim will rely on the testimony of the individuals that were involved in managing and operating the joint venture, all of whom reside in England. Defendants further argue that these same witnesses will likely be important for Plaintiff's fraud, negligent interference, civil conspiracy, and tortious interference claims. Third, Defendants argue that the documentary evidence representing those claims, as well as Plaintiff's claim for accounting, are corporate records of Kellogg U.K., Lenders Ltd., Garden City, and Ridley, all of which are located in England. Fourth, Defendants argue that all of the above witnesses are beyond the scope of this Court's compulsory process, so there is no assurance that they would attend trial in this forum. Further, Defendants argue that even if the Court could compel their appearances, the necessary costs to transport the witnesses would be substantial. Fifth, Defendants argue that it is uncertain whether this Court would be able to compel the deposition testimony of witnesses in England or compel the witnesses to produce their relevant documents. Finally, Defendants' argue that Plaintiff would not be precluded from collecting a judgment from Kellogg entered by an English court because Michigan has adopted the Uniform Foreign Money Judgment Act.

Plaintiff, on the other hand, argues that its crucial witnesses are located in the U.S., and primarily in Michigan. This includes two of Kellogg's CEOs (one currently resides in Michigan), as well as Defendants Baynes (currently residing in Michigan) and Roling. In addition, Plaintiff argues that documents surrounding the purchase and sale of Lenders, important to its claims, are located either in Battle Creek, Michigan, or San Francisco, California. Further, Plaintiff argues that potential third-party witnesses from Aurora Foods, the company that purchased Lenders, reside in San Francisco, which is much closer to Michigan than England. Finally, Plaintiff argues that English courts would recognize a subpoena from this Court, based on the affidavit of Defendants' own solicitor.

Based on the foregoing, the Court finds that Defendant has failed to meet its burden of showing that the relevant private factors weigh strongly in favor of England as the more convenient forum, or that Plaintiff has chosen this forum merely to "vex, harass, or oppress" Defendants. Plaintiff has alleged direct claims against Kellogg that it claims will require testimony of its officers and documentary evidence located in this forum or within the U.S. While several of these factors may also make England an adequate alternative forum, Plaintiff's choice of forum is given deference under this analysis. Even under the lower standard of deference given to a foreign plaintiff who selects the U.S. as its forum,[3] Defendants have failed to make the requisite showing.

### C. Public Interests

■ Similarly, Defendants have failed to show that relevant public factors weigh in favor of dismissal. The public factors the Court must consider are:

> (1) administrative difficulties of courts with congested dockets;
>
> (2) the burden of jury duty on people of a community having no connection with the litigation;

---

**3.** *Piper,* 454 U.S. at 256, 102 S.Ct. 252.

(3) desirability of holding a trial near those most affected by it; and,

(4) appropriateness of holding a trial in a diversity case in a court which is familiar with governing law.

*Faber–Plast GmbH v. Kleinert,* 997 F.Supp. 846, 847–48 (E.D.Mich.1998) citing *Gilbert,* 330 U.S. at 508, 67 S.Ct. 839.

Defendant argues that the public factors weigh in favor of dismissal for several reasons. First, Defendants argue that this matter would be concluded expeditiously in the English courts, in perhaps as few as 18 months. Second, Defendants argue that England has a stronger local interest in having the dispute settled there, since it principally involves two English corporations. Finally, Defendants argue that Michigan's only connection to this matter is through several layers of Kellogg's subsidiaries, therefore it would be an unfair burden to its citizens to serve as jurors on a matter with such little connection to this forum.

Plaintiff, however, argues that Michigan has a strong local interest in this action because it seeks redress against an entity in this forum, i.e. Kellogg, that Plaintiff alleges is directly responsible for the destruction of its business. In addition, many of the individuals involved in this conduct, including one of the named Defendants, are residents of Michigan.

As with the private factors, the Court is not persuaded that Defendants have met their burden of showing that the public factors outlined in *Gilbert* weigh in favor of disturbing Plaintiff's choice of forum. The parties' positions on the weighing of both the private and public factors in this action are based on their differing views of whom the real parties in interest are in this action. Plaintiff has not named any of Kellogg's English subsidiaries as defendants. Instead, Plaintiff named Michigan based Kellogg, as well as two purported officers of Kellogg,[4] both domiciled in the U.S., as the sole Defendants. Further, all of Plaintiff's claims are asserted directly against Kellogg. Thus, based on Plaintiff's view of this action, the conduct giving rise to this action occurred in Michigan, two of the three named Defendants are citizens of Michigan, and the critical witnesses and documents are located in Michigan.

Defendants, however, view this action in terms of a breach of contract dispute between the parties that entered into the joint venture agreement, namely Plaintiff and Kellogg's English subsidiaries. Defendants, therefore, argue that the majority of relevant witnesses and documents are in England.

Based on Plaintiff's complaint, however, the action does involve a local controversy based on Kellogg's citizenship. Further, Defendants have failed to show how any administrative issues or congestion in this Court make it less favorable than the English forum. Finally, while the Court notes that it may have to apply English law to resolve some of this action, Defendants have failed to show how the complexity of its application would warrant dismissal in favor of the English forum. Thus, the Court finds that Defendants have failed to make the requisite showing to overcome the presumption in favor of Plaintiff's selected forum.

## IV. CONCLUSION

For the reasons stated above, the Defendants' Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* [**Doc. 9–1**] is DENIED, without prejudice. The Court will soon schedule a status confer-

4. Defendants argue that these two officers, Roling and Baynes, were officers of Kellogg's English subsidiaries. See fn.2 *supra.*

ence, where a discovery schedule will be set. If, after a period of 90 days of merit discovery it appears the Court should revisit the weighing of public and private factors, Defendants are invited to renew their motion.

IT IS SO ORDERED.