BANCO NOMINEES LIMITED and
Bank of Bermuda Limited,
Plaintiffs,

v.

IROQUOIS BRANDS, LTD., Defendant.

Civ. A. No. 89–650 LON.

United States District Court,
D. Delaware.

Oct. 17, 1990.

Jeffrey B. Bove, of Connolly, Bove, Lodge & Hutz, Wilmington, Del. (Jacobs Persinger & Parker, New York City, of counsel), for plaintiffs.

William Prickett, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del. (Vincent Lipari, of Carro, Spanbock, Kaster & Cuiffo, New York City, of counsel), for defendant.

## OPINION

LONGOBARDI, Chief Judge.

## SUMMARY

This is a breach of contract claim involving the sale of stock in an English corporation. The Plaintiffs allege that the Defendant is liable for the contract price of the stock. The Defendant denies liability and alleges fraud and breach of warranties by the Plaintiffs or the Plaintiffs' agent. The Defendant asserts that most of the evidence necessary for the defense is in England and has moved to dismiss this action on the ground of *forum non conveniens.*

## FACTS

The Plaintiffs Banco Nominees Limited and Bank of Bermuda Limited are corporations organized under the laws of the Islands of Bermuda with their principal places of business in Bermuda. The Plaintiffs are the sellers in this dispute.

The Defendant Iroquois Brands, Ltd. is a corporation organized under the laws of Delaware and maintains its principal place of business in Texas.

The dispute in this case involves a contract for the sale of stock in Eagle Trust PLC (Eagle Trust), a corporation organized under the laws of the United Kingdom.

In April of 1989, the Defendant became interested in purchasing a substantial portion of stock in Eagle Trust. On May 5, 1989, Mr. Malcolm Stockdale, the Defendant's chief executive officer, wrote to Mr. John Ferriday, the chief executive officer of Eagle Trust. Mr. Stockdale indicated that the Defendant was willing to purchase 20% of the share capital of Eagle Trust for 22 pence per share.

In May of 1989, Mr. Stockdale and Mr. Robert Garrison, the Defendant's president, flew to London to discuss with Mr. Ferriday the purchase of Eagle Trust stock. It appears that Mr. Stockdale was in England at least from May 19, 1989, through May 26, 1989.

During this period, Mr. Stockdale directed Mr. Marshall Lester, one of the Defendant's New York attorneys, to prepare ten letters offering to purchase Eagle Trust shares. On May 22, 1989, these offers were sent by various means to ten shareholders, including Mr. Ferriday and the Plaintiffs.[1] On the same day, Mr. Ferriday signed a letter of warranty regarding the shares of Eagle Trust that he owned. Mr. Ferriday signed another letter of warranty, purportedly as the agent for the nine other shareholders, two days later on May 24, 1989. The offer letters required the shareholders to place the stock in escrow before June 5, 1989, and that the Defendant would pay for the stock on or before August 22, 1989.

Eight of the offers, including the offer made to the Plaintiffs, were accepted.[2] The offer letter to the Plaintiffs was sent to London by Mr. Lester. From there it was forwarded to Ms. Carol Michael–Green, an assistant manager of investments for the Bank of Bermuda. The original offer provided that the Defendant would purchase 24,000,000 shares of Eagle Trust stock at a price of 17⅜ pence per share. Ms. Michael–Green called Mr. Ferriday in London with regard to modifying the price and the number of shares. Apparently Mr. Ferriday told Ms. Michael–Green to amend the price to 22 pence per share and to increase the number of shares from 24,000,000 to 25,898,214. With these amendments, the offer was sent back to

---

1. The offerees were: Mr. Ferriday and Mr. Smith, Coast Securities Ltd., Coast Investments & Development Co. PSC, Cosh Holdings Ltd., Jonathan W. Samuelson, John Robert Horrocks, City & Urban Properties Ltd., City & Urban Securities Ltd., Banco Nominees Ltd. and Wells Fargo.

2. The offer made to Mr. Ferriday and Mr. Smith and the offer made to Wells Fargo were not executed.

Mr. Lester in New York. The number of phone calls and telecopies that passed between New York and London, Bermuda and New York, and Bermuda and London is in dispute. Furthermore, the legal significance of each communication is also disputed. However, the parties agree that the final contract reflected the higher price of 22 pence per share but maintained the original number of shares, 24,000,000.

On May 24, 1989, Mr. Stockdale and Mr. Garrison were appointed to the board of Eagle Trust and subsequently learned that Eagle Trust was insolvent. The Defendant notified the Plaintiffs that it would not pay for the Eagle Trust stock on August 18, 1989. At some point on or prior to August 18, 1989, the London Stock Exchange suspended trading in the stock of Eagle Trust. British governmental agencies are now conducting criminal investigations relating to the loss of Eagle Trust funds and a warrant was issued for the arrest of Mr. Ferriday on September 16, 1989. Mr. Ferriday is currently a fugitive. Both parties agree that the Eagle Trust stock is worthless.

On September 18, 1989, one of the other sellers commenced an action against the Defendant in the chancery division of the High Court of Justice in London.[3] On October 13, 1989, three more sellers filed a second action against the Defendant in the same court.[4] On November 17, 1989, the Plaintiffs commenced this action for the contract price of the Eagle Trust stock in the United States Federal District Court in Delaware.

The Plaintiffs contend that they have no relationship with Mr. Ferriday. The Plaintiffs deny that Mr. Ferriday had any authority to act as agent or make representations on behalf of the Plaintiffs. The Plaintiffs' position is that the meetings between Mr. Stockdale and Mr. Ferriday produced only a list of shareholders and that each sales contract is an independent, self-contained transaction. The Plaintiffs argue that the only relevant negotiations in

this action took place between Mr. Lester in New York and Ms. Michael–Green in Bermuda.

To the Plaintiffs, this is a simple breach of contract case requiring very little proof because the Defendant admits that it entered into the sales contract with the Plaintiffs. The Plaintiffs contemplate that determining damages will be the biggest issue in this controversy.

On the other hand, the Defendant characterizes each sales agreement as merely a part of an overall single transaction by which the Defendant purchased roughly 13% of Eagle Trust stock. The Defendant alleges that Mr. Ferriday fraudulently misrepresented the financial condition of Eagle Trust to the Defendant's officers. The Defendant alleges that the connection between Mr. Ferriday and the Plaintiffs is at least as significant as that of agent and principal. The Defendant has introduced financial data from another English corporation, Paramount Airlines, which lists Banco Nominees Limited and Mr. Ferriday as two of Paramount Airline's five shareholders. Certainly this fact is of minimal value in showing a connection between the Plaintiffs and Mr. Ferriday but it may serve as a starting point for further investigation regarding the contacts between the Plaintiffs and Mr. Ferriday.

The Defendant contends that this is an exceedingly complex fraud case and that all of the witnesses and evidence necessary to prove the fraud and to prove the relationship between the Plaintiffs and Mr. Ferriday are in England. The Defendant has moved this Court to dismiss this action on the ground of *forum non conveniens.*

## ANALYSIS

■ The doctrine of *forum non conveniens* allows a court to decline to hear a case even when jurisdiction is authorized "by the letter of a general venue statute" if a more convenient alternative forum ex-

---

3. Jonathan W. Samuelson began an action in the chancery division of the High Court of Justice in England. The number is CH 1989.–S.–No. 8089. Docket Item ("D.I.") 9, Exhibit F.

4. City Urban Properties Limited, City Urban Securities Limited and John Robert Horrocks are the Plaintiffs in this action. D.I. 9, Exhibit G.

ists for deciding the case. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). Granting a motion to dismiss on the ground of *forum non conveniens* is within the sound discretion of the trial court. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981); *Lony v. E.I. Du Pont de Nemours & Co.,* 886 F.2d 628 (3rd Cir.1989).

■ The analysis to determine whether the application of this exceptional doctrine is warranted involves several steps. Initially, the trial court must determine whether there is a suitable alternative forum. *Lony,* 886 F.2d at 633. When the plaintiff is foreign, the court must determine what degree of deference to afford the plaintiff's choice of forum. The burden of persuasion will always remain with the defendant. However, the magnitude of the defendant's burden increases as the deference given to the plaintiff's choice of forum increases. *Id.* at 634–35. Finally, in determining whether the defendant has met the burden of showing that the case should be dismissed, the court must examine a variety of private and public interest factors. *Gulf Oil Corp.,* 330 U.S. at 508–09, 67 S.Ct. at 843; *Lony,* 886 F.2d at 634–35.

### 1. *Availability of Alternative Forum*

■ A suitable alternative forum is one which has jurisdiction over the defendant and offers the plaintiff a satisfactory remedy. *See Piper Aircraft Co.,* 454 U.S. at 254 & n. 22, 102 S.Ct. at 265 & n. 22; *Lony,* 886 F.2d at 633. The Defendant has consented to submit to jurisdiction in England. The High Court of Justice is capable of hearing this case; it already has two actions before it arising from four of the other contracts involved in this transaction. Furthermore, the Plaintiffs have not argued that English law would deny them an appropriate remedy. Therefore, the first step in the analysis is satisfied.

### 2. *Degree of Deference Due Plaintiffs' Choice and Defendant's Burden*

■ Ordinarily the Plaintiff's choice of forum is entitled to great deference and should not be disturbed unless there is " 'oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.' " *Piper Aircraft Co.,* 454 U.S. at 241, 102 S.Ct. at 258 (quoting *Koster v. Lumbermens Mutual Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947)). However, the presumption that the forum chosen by the plaintiff is convenient has less force when the plaintiff is foreign. *Piper Aircraft Co.,* 454 U.S. at 255–56, 102 S.Ct. at 265–66; *Lony,* 886 F.2d at 633. In ruling on a *forum non conveniens* motion involving a foreign plaintiff, the District Court must determine how much deference is due the foreign plaintiff. *Lony* 886 F.2d at 634; *Lacey v. Cessna Aircraft Co.,* 862 F.2d 38, 45 (3rd Cir.1988). If a foreign plaintiff can make a strong showing that the forum is convenient, the foreign plaintiff should be accorded the same deference that a domestic plaintiff would receive. *Lony,* 886 F.2d at 634.

The Plaintiffs argue that both England and Delaware are inconvenient fora for them and therefore their choice is entitled to some deference. The Plaintiffs apparently chose to file suit in Delaware because the Defendant is incorporated here and Delaware is "the most sensible and convenient location for all parties." D.I. 14 at 13. However, the Plaintiffs have not articulated any specific reasons why Delaware is convenient. There are no witnesses or documents in Delaware. None of the negotiations took place in Delaware. Neither the Defendant nor the Plaintiffs have offices in Delaware. The Plaintiffs are even requesting that New York law rather than Delaware law be applied to the contract.[5]

---

5. The Court notes that in a footnote of Plaintiffs' brief in opposition to dismissal, Plaintiffs' counsel suggests that this Court could properly transfer this motion to New York under 28 U.S.C. § 1404(a). The Court did consider this option but declines to transfer the case because the record does not clearly show that the Defendant is amenable to process in New York or that venue would be proper in New York.

This Court finds that the Plaintiffs have not made a strong showing of convenience and are not entitled to the same degree of deference given to a domestic plaintiff. The Plaintiffs' choice is still entitled to some weight because neither England nor Delaware is convenient for the Plaintiffs. Their choice will not be disturbed unless the Defendant establishes by a strong preponderance that the balance of private and public factors favors dismissal. *See Lacey v. Cessna Aircraft Co.*, 736 F.Supp. 662, 664 (W.D.Pa.1990).

3. *Factors to Consider*

■ The United States Supreme Court set out the factors that must be considered in determining whether to dismiss a case on the ground of *forum non conveniens* in *Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. at 843. Private interest factors include: the relative ease of access to sources of proof; the availability of compulsory process for securing attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises; the enforceability of the judgment; and any other practical problems that would make trial expeditious and inexpensive. Public interest factors to be considered are: administrative difficulties caused by court congestion which arises when cases are not litigated at their origins; the unfairness of imposing jury duty on people of a community with no relation to the litigation; the local interest in having localized controversies decided at home; difficulties associated with application of foreign law; and any other burdens imposed on the forum. *Id.* at 508–09, 67

S.Ct. at 843. Each of these factors is analyzed below based on the briefs, affidavits and exhibits submitted by the parties.

(a) Private Interest Factors

■ In weighing the private interest factors, this Court must "scrutinize the 'substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant to, the plaintiff's cause of action and to any potential defenses to the action.'" *Lacey*, 862 F.2d at 46 (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528, 108 S.Ct. 1945, 1952, 100 L.Ed.2d 517 (1988)).

The parties agree on the amount of stock that was to be purchased, the selling price of the stock and that the stock is currently without value. The parties disagree on whether the letter from Mr. Ferriday to the Defendant dated May 24, 1989, is part of the contract. In simplest terms, the controversy centers on Mr. Ferriday's role in the parties' transaction. Under the Plaintiffs' theory, any actions by Mr. Ferriday are irrelevant because he is not a party to the contract. The Defendant, on the other hand, alleges an intimate connection between the Plaintiffs and Mr. Ferriday. Proving this connection is vital to the Defendant's defenses of fraud and breach of warranty.[6]

(i) *Relative Ease of Access to Sources of Proof*

Although the parties dispute who negotiated the contract and where the negotia-

---

**6.** Counsel for the Plaintiffs suggest that Mr. Ferriday's role is not an issue in the case. They argue there is no agency relationship and no evidence which is admissible to show an agency relationship. Counsel for the Plaintiffs cite New York case law for the proposition that an alleged agent's extrajudicial statements made while not in the presence of the alleged principal are inadmissible to prove the existence of an agency relationship. D.I. 14 at 15–16. While this seems to be a correct reading of the New York law, it is not applicable in this case.

This Court finds that there is evidence other than statements by Mr. Ferriday and the May 24th letter which tends to show the existence of a relationship between the Plaintiffs and Mr.

Ferriday. For example, the Plaintiffs' own employee, Ms. Carol Michael–Green, indicates in her affidavit that she spoke with John Ferriday by telephone on two occasions. D.I. 13 at 2–3. In addition, the Defendant has introduced a "Company Search Report" of Paramount Airlines, another United Kingdom corporation. D.I. 17, Exhibit A. This report indicates that the 900,000 outstanding shares of Paramount are held by five shareholders. Mr. Ferriday holds 286,990 shares and Banco Nominees Limited holds 100,000 shares. The December, 1987, financial statement of Paramount Airlines lists Mr. Ferriday as a director of Paramount. D.I. 17, Exhibit B.

tions occurred, it is clear that the only places where any negotiating could have taken place were London, New York and Bermuda. Consequently, there are no witnesses or evidence in Delaware. If this matter proceeds in Delaware, every witness and piece of evidence will have to be transported here.

In order to prove their claim of breach of contract, the Plaintiffs will have to transport one witness and several documents located in Bermuda to either Delaware or England.[7] Either trip is going to be inconvenient for the Plaintiffs and the Court notes that the Plaintiffs would prefer to bring their evidence to Delaware. However, due to the Plaintiffs' limited number of witnesses and documents, their ease of access to proof does not vary significantly with the forum.

In contrast, the Defendant is likely to rely on a great number of witnesses and documents to show a connection between the Plaintiffs and Mr. Ferriday. The Defendant has at least three witnesses in Texas and one in New York.[8] Each witness probably has several relevant documents. The Defendant argues that these witnesses and evidence will already be in England due to the other litigation. This Court notes that consolidation of trials or simultaneous trials may be impossible and assumes that the Defendant may be required to bring these witnesses back to England to testify in this case if the action is dismissed.

The bulk of the remaining evidence will be found in England. For example, several of the sellers in the related contracts have business addresses in England.[9] Mr. Smith, a director and shareholder of Eagle Trust and Paramount Airlines, is in England. Other close business associates of Mr. Ferriday would be found in England. The accountants, creditors, escrow agents and stock brokers used by Mr. Ferriday and the records of these non-party witnesses would be in London. In addition, the Defendant had London counsel who assisted with the London portion of the negotiations. The records of other United Kingdom corporations, such as Paramount Airlines, which might show a longstanding relationship between the Plaintiffs and Mr. Ferriday would be in England. The criminal investigation proceeding in London may unearth relevant evidence. Finally, if Mr. Ferriday is ever located, he would be brought to London. Therefore, the Defendant's difficulty in producing evidence would be significantly increased if this action were heard in Delaware.

The Court finds that this factor strongly favors dismissing the case.

(ii) *Availability of Compulsory Process for Attendance of Unwilling Witnesses*

It is unlikely that litigating this case in London would deprive the Plaintiffs of necessary compulsory process for the attendance of unwilling witnesses. The Plaintiffs' witnesses are under the Plaintiffs' control. Because this Court has jurisdiction over the Defendant, this Court can require that the Defendant and the witnesses within the Defendant's control submit to jurisdiction in the English courts as a condition of dismissing the case. *See Piper Aircraft Co.,* 454 U.S. at 257, n. 25, 102 S.Ct. at 266, n. 25; *Lacey,* 736 F.Supp. at 665–66.

On the other hand, litigating the case in Delaware may very well deprive the Defendant of key witnesses necessary to establish the Defendant's affirmative defenses. The other sellers and Mr. Ferriday's business associates are likely to be unwilling witnesses. Because these witnesses are English citizens, the English courts will be better able to compel their testimony. The

---

7. The Plaintiffs would undoubtedly call Ms. Michael–Green to testify.

8. Mr. Stockdale, Mr. Garrison, officers of the Defendant, and Mr. Boles, counsel for the Defendant, appear to reside in Texas. Mr. Lester, the attorney who drafted the letter offers, resides in New York.

9. The sellers with English addresses are: Coast Securities Limited, Mr. Jonathan W. Samuelson, Mr. John Robert Horrocks and City & Urban Properties, Ltd. Mr. Albert Wade, allegedly the Chief Executive of Coast Securities, is presumably an English resident.

Court finds that this factor strongly favors dismissal.

### (iii) *Cost of Obtaining Attendance of Willing Witnesses*

For the purposes of this motion, the Court will assume that it will be more expensive for the Plaintiffs to fly their witnesses and documents to England than to Delaware. The Court can protect the Plaintiffs from increased costs with respect to other witnesses by requiring the Defendant to bear the cost of producing any witnesses or documents within the Defendant's control for the Plaintiffs in London.

The Defendant presumably will call at least six primary willing witnesses. None of them resides in Delaware. Three are in Texas, one is in New York and two are in London. Unless the litigation can be consolidated with the ongoing litigation in England, the Defendant's costs for bringing these six witnesses to Delaware is not going to be significantly greater than the costs of bringing four witnesses to London.

The costs will mount for the Defendant, however, if the Defendant tries to solicit the testimony of English witnesses not under the control of the Defendant, such as creditors or stock brokers of Mr. Ferriday. If this case were litigated in England, these witnesses probably could testify by taking very little time from their schedules. If this case is litigated in Delaware, such a short disruption would not be possible and costs may prohibit the Defendant from bringing such witnesses here.

Therefore, the Court finds this factor is slightly in favor of dismissing the case.

### (iv) *Possibility of View of Premises*

This factor is not applicable in this case. Therefore, it is neutral.

### (v) *Enforceability of Judgment*

Assuming that the defendant voluntarily submits to jurisdiction in England, a judgment in either forum would be enforceable. Therefore this factor is neutral.

### (vi) *Relative Advantages and Obstacles to Fair Trial*

The Plaintiffs are not engaged in multiple litigations over this transaction. Whether the litigation proceeds in London or in Delaware, the Plaintiffs will be able to collect all their evidence and witnesses in one forum and prepare for trial. As the matter stands now, the Defendant does not have that luxury. The Defendant is involved in two other pieces of litigation involving its purchase of Eagle Trust Stock. Several of the Defendant's witnesses will probably be the same in each case. Requiring these key witnesses to fly between London and Delaware to testify and prepare for litigation occurring simultaneously in two fora is a burden which might hamper the Defendant's ability to prepare its case. The Court finds that this factor moderately favors dismissing the case.

In conclusion, the Court finds that on balance the private interest factors weigh strongly in favor of dismissing this action.

### (b) Public Interest Factors

Analyzing the public interest factors also "thrust[s] the court into the merits of the underlying dispute. To evaluate these factors, the court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum." *Van Cauwenberghe,* 486 U.S. at 528, 108 S.Ct. at 1952.

### (i) *Administrative Difficulties*

This case presents no exceptional administrative burdens on the Court. There are no documents or testimony which would require translation. There would be no large pieces of physical evidence to be stored while waiting for trial. Therefore, this factor does not support dismissal.

### (ii) *Imposition of Jury Duty on People of a Community With no Relation to the Litigation*

There has been no request for a jury trial in this case, therefore this factor does not support dismissal.

### (iii) *Local Interest in Having Localized Controversies Decided at Home*

England clearly has a strong local interest in deciding this action. Eagle Trust is an English corporation. The financial problems of Eagle Trust are the subject of

criminal investigations in England. The scope of the alleged fraud and the parties involved are issues which are more important to England than to Delaware.

The only connection Delaware has to this matter is that the Defendant is incorporated here. While Delaware has a strong interest in making sure that Delaware corporations do not breach their contracts, that interest is greatly outweighed by England's concern over possible fraud and securities violations which are connected to this matter. This factor weighs strongly in favor of dismissing the case.

### (iv) Difficulties Associated with Application of Foreign Law

Because this action is based on diversity, this Court would be required to apply the choice of law rules of Delaware to determine which law to apply. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Based on the information currently before this Court, it seems likely that the law of England would apply to this case.

If the Defendant's allegations of fraud are true, then this Court would apply the law of the place where the intentional misrepresentation occurred. *Lony*, 886 F.2d at 628 (Delaware law would apply where the defendant intentionally made a misrepresentation in Delaware even though the plaintiff's injury occurred in West Germany).

If this is simply a breach of contract case, as the Plaintiffs allege, English law is still the most likely to apply. In conducting conflict of law analyses in contract disputes, the Delaware courts have recently moved away from the traditional "place of contracting" test and have used the more flexible Restatement (Second) test of determining which forum has the "most significant relationship" to the transaction and the parties. *See, e.g., Oliver B. Can-*

non and Son v. Dorr–Oliver, Del.Supr., 394 A.2d 1160, 1166 (1978); National U. Fire Ins. Co. v. RLC Corp., Del.Super., 449 A.2d 257, 261 (1982); Coca–Cola Bottling of Elizabethtown v. Coca–Cola Co., 668 F.Supp. 906, 918 (D.Del.1987).

The Restatement (Second) approach identifies the following factors as relevant in resolving a conflict of law question: the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicil, residence, nationality, place of incorporation, and place of business of the parties. Restatement (Second) of Conflict of Laws § 188 (1969).

In the present case, the place of contracting and place of negotiation are in dispute. Under Delaware law, the place of contract formation is the place where the last act necessary for contract formation occurred. *Norse Petroleum A/S v. LVO Intern, Inc.*, Del.Super., 389 A.2d 771, 773 (1978); *Miller v. Newsweek, Inc.*, 660 F.Supp. 852, 854 (D.Del.1987). Depending on whose version of the facts one adopts, the place of contract formation is either England, New York or Bermuda.[10] The undisputed facts tend to show that at least part of the negotiation occurred in England. The contract was to be performed in England; Banco Nominees Limited placed the stock in an escrow account in the Bank of Scotland in London. D.I. 9, Exhibit D. The subject matter of the contract was stock in an English corporation, the price was to be paid in English currency. The residence of the parties suggests that the law of either Delaware, Texas or Bermuda should apply. On balance, these factors favor applying English law if this case is considered a contract dispute.

Because both the Defendant's and Plaintiffs' theory of the case would lead this

---

**10.** The counsel for the Plaintiffs suggest that the choice of law analysis leads to application of New York law. The argument is based upon the premise that the final act necessary to create the contract was performed by Mr. Lester in New York.

The Court does not find this argument convincing. First, it is not clear from the facts that

the final act was performed by Mr. Lester in New York. The final act may have been performed by Ms. Michael–Green in Bermuda. Second, even if New York is determined to be the place of contracting, this is but one factor to be considered in a choice of law analysis.

Court to apply English law, this factor favors dismissal. This Court is unfamiliar with the law of England and while applying foreign law is not an insurmountable task, this factor favors dismissing the case and allowing the English courts to apply their home law.

(v) *Other Burdens Imposed on Forum*

Finally, hearing this case in Delaware would result in this Court repeating many of the same steps that are being conducted in England in the other litigation arising out of these eight contracts. The primary differences in the contracts are the number of shares to be purchased and the price to be paid, terms which are not in dispute. In addition, one contract has an additional clause providing that the contract should be governed by the law of England. This is not a significant difference, given that this Court would most likely apply English law to the Plaintiffs' case.

The Defendant will raise the same defenses in each case. Many of the witnesses in each case will be identical. Much of the evidence presented in each case will be the same. It is a waste of judicial resources to require two courts to attend to this matter when there is the chance that the cases could be consolidated in England. This factor weighs in favor of dismissing the case so that it may be pursued in England.

The Court concludes that on balance the public interest factors favor dismissing this action on the ground of *forum non conveniens.*

## CONCLUSION

The Defendant has introduced enough evidence to show that, taken together, the public and private interest factors weigh strongly in favor of dismissal. The dismissal will be subject to several conditions designed to protect the Plaintiffs' ability to pursue this action in England and to reduce any inconvenience to the Plaintiffs which might arise due to discovery and trial in England. For the reasons stated above, the above captioned action will be dismissed on the ground of *forum non conveniens.*