ALEXANDER PROUDFOOT, Plc, Alexander Proudfoot (U.K.) Ltd. and Alexander Proudfoot Productivity Management Europe S.A., Plaintiffs,

v.

FEDERAL INSURANCE COMPANY, Defendant.

No. 93 C 6287.

United States District Court,
N.D. Illinois,
Eastern Division.

July 27, 1994.

Michael P. Padden, Gardner, Carton & Douglas, Chicago, IL, Jonathan Rosen, Peabody & Arnold, Boston, MA, for plaintiffs.

Harold E. McKee, III, Susan Georgette Fillichio, Sedgwick, Detert, Moran & Arnold, Chicago, IL, Robert B. Budelman, Jr., Sedgwick, Detert, Moran & Arnold, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Alexander Proudfoot Plc ("Proudfoot Plc"), Alexander Proudfoot (U.K.) Ltd. ("Proudfoot UK"), and Alexander Proudfoot Productivity Management Europe S.A. ("APPME"), collectively referred to herein as "Proudfoot," bring this action for declaratory relief and damages against defendant Federal Insurance Co. This suit was originally filed in the United States District Court for the District of New Jersey. There, defendant moved to dismiss for *forum non conveniens*, or, in the alternative, to transfer to this court pursuant to 28 U.S.C. § 1404. The court denied Federal's motion to dismiss, but granted the motion to transfer. Presently before this court is Federal's renewed motion to dismiss this action for *forum non conveniens*. For the reasons set forth below, Federal's motion is granted.

### I. Background

Plaintiffs Proudfoot Plc and its subsidiary, Proudfoot UK, are corporations organized under the laws of the United Kingdom with their principal places of business in England. Plaintiff APPME, another Proudfoot Plc subsidiary, is organized under the laws of, and has its principal place of business in, Belgi-

um. Defendant Federal is incorporated under the laws of Indiana, with its principal place of business in New Jersey. It is authorized to conduct business in Illinois and England.

On October 4, 1991, Federal issued Crime Insurance Policy No. 8120-03-69-C to Proudfoot following negotiations in Chicago, Illinois. Under the Policy, Federal provided insurance coverage to Proudfoot for losses due to theft by Proudfoot employees. From January, 1991 to March, 1992, Proudfoot UK and APPME retained another corporation organized under the laws of England, Payroll Services Ltd. ("PSL"), to administer payroll management services. Specifically, PSL produced the payroll, made payments to staff and to British tax collection services, and performed all other payroll services, for Proudfoot UK and APPME. According to Proudfoot, the companies' relationship with PSL was based upon a course of conduct rather than a formal contract.

During the relevant period, Proudfoot UK and APPME transferred funds to PSL by instructing their respective banks to remit funds to a "client account" maintained by PSL at its bank in England. On or about March 23, 1992, PSL notified Proudfoot that PSL's funds were seriously depleted, and that it was entering provisional liquidation. Subsequent investigation by Proudfoot revealed that PSL had allegedly failed to pay a sum of £898,443.46 to UK Inland Revenue on behalf of Proudfoot. Asserting that this loss was covered under the Policy, Proudfoot filed a Proof of Loss with Federal on May 14, 1992.[1] On July 31, 1992, Federal advised Proudfoot that it was disclaiming coverage. In support of its decision, Federal noted that, in its view, PSL had consistently acted as a contractor for Proudfoot rather than as an employee of Proudfoot, and that the cause of the loss of funds (*i.e.*, whether through misappropriation or simply through imprudent investing)[2] was unknown. However, Federal

---

[1]. Specifically, Proudfoot maintained that the amount was unlawfully misappropriated for PSL's personal benefit, and that PSL acted as Proudfoot's trustee. Accordingly, Proudfoot claims, the loss constituted a "theft" by an "employee," under the Policy's expansive definition of the term.

[2]. The course of dealing between Proudfoot and PSL indicated that both parties understood that PSL had the right to use and invest the funds remitted to PSL's account pending relevant payment dates to UK Inland Revenue. The Policy, however, covered unlawful "takings," not losses due to failed trading or mismanagement.

invited Proudfoot to offer any information it had "which might qualify our understanding of the matter." During the following months, each side attempted to convince the other of its position. On September 24, 1992, Federal's inhouse counsel in New Jersey, Christopher Franklin, reaffirmed Federal's disclaimer after meetings with Proudfoot's counsel in New York. Proudfoot filed the present action on October 15, 1992.

## II. Standard for Dismissal for *Forum Non Conveniens*

■ The doctrine of *forum non conveniens* allows a court to decline to exercise its jurisdiction for prudential reasons, even when that jurisdiction is otherwise proper. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). The decision to do so, however, rests within the district court's sound discretion. *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947). To guide a court in considering motions to dismiss for *forum non conveniens*, the Supreme Court has articulated a list of "private interest factors," relating to the convenience of the litigants, and "public interest factors," relating to the convenience of the forum. *See Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843.[3] Even after weighing those factors, however, a district court retains "substantial flexibility" in deciding whether to grant the *forum non conveniens* motion. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988).

## III. Discussion

■ Proudfoot first asserts that Federal's motion is barred by the doctrine of res judicata. We initially observe that Proudfoot has cited no authority in support of its claim that a court's decision to *deny* a motion to dismiss based on *forum non conveniens* is subject to the doctrine of res judicata. Indeed, the only authority cited by Proudfoot whatsoever is 92 CJS § 201, which, according to Proudfoot, states that "[t]he doctrine of *res judicata* applies to orders or decisions on motions for change of venue...." The cited authority, however, is entitled "Vendor and Purchaser: Necessity of Freedom from Encumbrances;" it does not contain the quoted language, and is in no way related to the issue before us.[4] In any event, it is axiomatic that an essential element of res judicata is that the assertedly preclusive order or judgment be final. *See, e.g., Wade v. Hopper*, 993 F.2d 1246, 1252 (7th Cir.1993). The New Jersey District Court made no express finding of finality; on the contrary, the court made every indication that the issue remained open for reconsideration. For example, the court noted that Federal claimed that it lacked access to various documents and PSL employees in England, but concluded that Federal had failed to persuade the court that discovery procedures would be unavailable if the case remained in the United States. Accordingly, the court held that that factor was insufficient to warrant dismissal, but added the caveat "at least at this juncture in the case." *Alexander Proudfoot*

---

3. Private interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expedition and inexpensive." *Gilbert*,. 330 U.S. at 508, 67 S.Ct. at 843. Public interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981)

(quoting *Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843).

4. According to Proudfoot, the relevant section also states that "[a]n order or decision thereon, in the absence of an appeal therefrom, is conclusive." Because Federal failed to appeal or otherwise challenge the court's ruling, Proudfoot contends, it cannot raise the issue in the present forum. It is well established, however, that a ruling denying a motion to dismiss on the ground of *forum non conveniens* is *not* immediately appealable as of right. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 529, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988). Accordingly, even if the section cited contained the language quoted, its applicability in the present situation is questionable.

*Plc v. Federal Insurance Co.,* Civil Action No. 92–4384 (MLP), slip op. at 9 (D.N.J. Sept. 30, 1993). Similarly, the court concluded by stating that Federal had failed to sustain its burden *"on the present record,"* thus implicitly leaving the issue open for later consideration. *Alexander Proudfoot Plc,* slip op. at 10. It is therefore apparent that the court's ruling was anything but final.

■ Furthermore, even if a court grants a motion to dismiss for *forum non conveniens,* and thus enters final judgment, another court may revisit the issue if material facts underlying the judgment have changed. *See Exxon Corp. v. Chick Kam Choo,* 817 F.2d 307, 312 (5th Cir.1987), *rev'd on other grounds,* 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988); *cf. Parsons v. Chesapeake & Ohio Ry. Co.,* 375 U.S. 71, 73–74, 84 S.Ct. 185, 186–87, 11 L.Ed.2d 137 (1963). In the present case, as noted above, the New Jersey District was not convinced that Federal would be unable to acquire access to PSL's employees and documents through traditional discovery procedures. In its present motion, Federal has submitted evidence in support of its claim: its efforts to obtain the testimony of former PSL employees have been frustrated, and PSL's liquidators have refused to provide Federal with the whereabouts of relevant PSL directors. In addition, the liquidators stated that any information regarding PSL should be obtained through the liquidators rather than the former employees.[5] We conclude that this evidence regarding the sufficiency of discovery procedures available in this coun-

try warrants revisiting the *forum non conveniens* issue.[6]

■ At the outset of any *forum non conveniens* inquiry, we must consider whether an alternative forum exists. *Piper,* 454 U.S. at 255 n. 22, 102 S.Ct. at 265 n. 22. This requirement is satisfied when a defendant is amenable to process in the preferred jurisdiction. *Id.* In the instant case, Federal has represented that it is amenable to process in England, and this prerequisite is thus fulfilled. We also observe that there is traditionally a strong presumption in favor of the plaintiff's choice of forum. *Id.* at 255, 102 S.Ct. at 265. However, as the New Jersey court likewise noted, a plaintiff's choice of forum is entitled to less deference if the plaintiff is not an American citizen. *Id.* at 241, 102 S.Ct. at 258. Accordingly, while Proudfoot's decision to pursue this action in the United States will not be entirely discounted, it will be accorded somewhat less consideration than if Proudfoot were an American corporation. We now turn to the traditional factors considered in resolving motions based on *forum non conveniens.*

## A. Private Interest Factors

In examining the private interest factors,

the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant to the plaintiff's cause of action and to any potential defenses to the action.

---

5. Proudfoot does not dispute Federal's claim in this regard, but suggests that the issue is irrelevant, because the New Jersey court considered this to be a "subsidiary" issue, and insufficient to justify dismissal. *See Alexander Proudfoot Plc,* slip op. at 9. However, "subsidiary" and "nonmaterial" are not synonymous; indeed, the New Jersey court apparently thought that Federal's asserted difficulty in obtaining discovery was a significant enough issue to address it in some detail. Furthermore, as discussed above, the court expressly stated that the issue was insufficient to justify dismissal "at this juncture," as Federal had offered no evidence that the discovery would, in fact, be unavailable. They have now made that offering. Accordingly, consideration of the issue is entirely appropriate, and not inconsistent with the earlier court's order.

6. Proudfoot also maintains that the present motion is barred by the "law of the case" doctrine. However, this doctrine is discretionary; "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance." *Christianson v. Colt Indus. Oper. Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). Furthermore, the doctrine applies only when a court actually decides a rule of law. *Id.* at 816, 108 S.Ct. at 2178. As a result, where, as here, the court does not issue a final ruling, but instead leaves the issue open for future revisiting, the law of the case doctrine is inapposite.

*Van Cauwenberghe,* 486 U.S. at 528, 108 S.Ct. at 1952. In support of its motion, Federal maintains that access to PSL employees and records are vital to its defense that there was no "theft" of the funds at issue, and that PSL was merely an independent contractor or agent of Proudfoot, rather than an employee or trustee.[7] All of the sources of proof relevant to these issues, therefore, are located in England. Furthermore, the witnesses who would be needed to testify on these issues are likewise located in England. As one primary consideration in assessing the "private interest" prong is the convenience of witnesses, *see Interpane Coatings v. Australia & New Zealand,* 732 F.Supp. 909, 916 (N.D.Ill.1990), we conclude that Federal has made a significant showing that trial of this action in England would be both less costly and more efficient.[8]

Proudfoot, on the other hand, has offered no compelling reason for our continued exercise of jurisdiction over this matter. They maintain that the central witnesses in this action would be the parties who actually negotiated the Policy. As the Policy was negotiated in Chicago, Proudfoot suggests that this court is the most convenient forum. While it is true that the policy was negotiated in this district, we observe that Proudfoot has failed to identify a single witness currently located in Illinois that would be called to testify at any trial. In any event, because any such witnesses would likely be employees of the parties, their presence in Illinois is entitled to less weight in considering the present motion. *See Robert Bosch Corp. v. Air France,* 712 F.Supp. 688, 691 (N.D.Ill. 1989). Finally, we note that the New Jersey court concluded that "a major component of the culpable conduct is the defendant's alleged refusal to interpret properly the provisions of the Policy...." *Alexander Proudfoot Plc,* slip op. at 9. Proudfoot does not claim, nor can it, that the interpretation of the Policy in the present dispute was made in Illinois. On the contrary, the disclaimer of coverage came from Federal's lawyers in England and New Jersey, and discussions regarding coverage occurred in England, New York, and Brussels. Accordingly, it is clear that the private interest factors militate strongly in favor of dismissal.

## B. Public Interest Factors

Perhaps the most salient consideration in the analysis of public interest factors is the determination of the law governing the dispute. The need to apply foreign law strongly points toward dismissal in considering a *forum non conveniens* claim. *Piper,* 454 U.S. at 260, 102 S.Ct. at 268. Because this case was transferred to this court pursuant to 28 U.S.C. § 1404(a), this court must apply the law which would have been applied by the transferor court. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964). The New Jersey District Court, in turn, would have been compelled to apply the choice of law rules of New Jersey; a federal district court sitting in diversity must apply the choice of law rules

---

7. Quoting from a letter written by Federal's counsel, Christopher Franklin, Proudfoot maintains that the "facts and circumstances of the loss are not in dispute." Accordingly, Proudfoot suggests that the issues raised by Federal in conjunction with this motion are red herrings. The above quote, however, is taken entirely out of context. In the same letter, Franklin qualifies the statement by stating that, while Federal acknowledged that PSL caused a loss of Proudfoot's funds, that loss was not covered by the Policy. Specifically, Franklin concluded that PSL was not an "employee," and continued to question whether a trust relationship existed between Proudfoot and PLC. In addition, he concluded that there was no proof that the loss resulted from theft, and therefore covered by the Policy. These are the very issues on which Federal now seeks, and is effectively unable to obtain, discovery.

8. Proudfoot maintains that Federal has failed to demonstrate that it would be able to get access to the documents and witnesses it seeks, even if this case were brought in England. While this is true, Federal has clearly demonstrated that these "sources of proof" are not available, or at least not without great cost, if the case proceeds in this court. Furthermore, Federal correctly notes that the liquidators have essentially required Federal to go through them to get the information Federal seeks. As a result, Federal would be required to obtain the testimony of the PSL liquidators in addition to that of the actual witnesses, thus adding to the amount of "trans-Atlantic" discovery required, as well as increasing the discovery- and trial-related costs in this action, costs which would be far less if the case proceeded in England.

of the state in which it is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–96, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). We must therefore consider what law New Jersey courts would apply to the present dispute.[9]

With respect to controversies surrounding liability insurance contracts, the New Jersey Supreme Court has adopted a form of the "most significant relationship" test. *See General Metalcraft Inc. v. Liberty Mut. Ins. Co.*, 796 F.Supp. 794, 796 (D.N.J.1992) (citing *State Farm Mut. Auto Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 417 A.2d 488, 491–93 (1980)). Under this test, "the law of the place of contract will govern ... unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield." *State Farm*, 417 A.2d at 493. In the present case, the *only* relationship which Illinois has to the present controversy is that the Policy was negotiated here. The event allegedly giving rise to coverage, however, occurred in England. The disclaimer of coverage, which prompted this suit, issued initially from England. The negotiations which preceded this suit occurred, in large part, in England. Proudfoot Plc and its subsidiary, Proudfoot UK, are organized under the laws of England, and have their principal places of business in that country.[10] Finally, PLC, the company which occasioned the loss at issue, is an English corporation, and is currently in provision liquidation in that country. In sum, it is likely that England has a far greater interest in this dispute, which relates to insuring an English corporation for loss allegedly sustained as the result of theft by another English corporation, than Illinois, which is not the home of any party to this litigation, has no connection to the loss for which coverage is sought, and from which no decision regarding coverage was made. Ac-

cordingly, it strongly appears as though English law would apply in the present case.[11]

In sum, both the private and public interest factors strongly point toward a finding of *forum non conveniens*, and clearly outweigh the limited deference granted Proudfoot's choice of forum. Furthermore, it is apparent that England is a far more appropriate and convenient forum. We conclude that Federal has satisfied its burden in demonstrating the significant inconvenience of litigating this matter in Illinois, and therefore grant its motion to dismiss.

### IV. Conclusion

For the reasons set forth above, defendant Federal Insurance Company's motion to dismiss on the ground of *forum non conveniens* is granted. It is so ordered.

---

9. Proudfoot once again asserts that we are precluded from considering this issue because the New Jersey court "ruled that ... [the Policy's] interpretation is governed by Illinois law." However, Proudfoot severely mischaracterizes the court's order. With virtually no analysis, the court stated "the laws of [Illinois] *appear* to apply." *Alexander Proudfoot Plc*, slip op. at 10. Again, the court clearly left the issue open for later, more thorough, consideration.

10. Although APPME is a Belgian corporation, it too has substantial ties to England.

11. Like the New Jersey District Court, we decline to issue a final ruling on the question of choice of law.