**LUDGATE INSURANCE COMPANY LIMITED, Plaintiff,**

v.

**B. Frederick BECKER, William E. Lape, and American Continental Insurance Company, Defendants.**

**No. 95 C 4086.**

United States District Court, N.D. Illinois, Eastern Division.

Dec. 4, 1995.

---

James I. Rubin, Samuel William Ach, Anthony E. Rothschild and Harry Joshua Nelson, Butler, Rubin, Saltarelli & Boyd, Chicago, IL, for plaintiff.

Mitchell Alan Orpett, Tribler & Orpett, Chicago, IL, John M. Nonna and Michael Marcus, Werner & Kennedy, New York City, for defendants.

## MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Plaintiff Ludgate Insurance Company Limited (Ludgate) brought this action against B. Frederick Becker (Becker) and William E. Lape (Lape), two of Ludgate's former directors, for breach of fiduciary duty in relation to their approval of a commutation agreement which allegedly deprived Ludgate of assets without adequate compensation. Plaintiff also seeks to impose a constructive trust, or in the alternative to obtain a rescission remedy, against defendant American

Continental Insurance Company (ACIC), the other party to the commutation agreement, in order to recover the allegedly lost assets. Although diversity jurisdiction is proper under 28 U.S.C. § 1332,[1] defendants now move to dismiss or otherwise stay the action on the ground of *forum non conveniens* and the existence of an allegedly related action pending in the courts of the United Kingdom (the English action). We deny the motion.

## FACTS

On June 30, 1992, Ludgate and ACIC entered into a commutation agreement in which Ludgate agreed to pay ACIC a sum of money ($24,000,000) in exchange for the complete release of all present and future losses which Ludgate owed or would owe ACIC under various reinsurance contracts between the parties. Ludgate had acted as the reinsurer, and ACIC the reinsured, in each of the contracts commuted in the agreement. The commutation agreement in effect discharged Ludgate's obligations under these contracts in exchange for its relinquishment of rights to premiums previously paid and to future payments, thus depriving the corporation, according to plaintiff, of significant past and future profits. Lape, the managing director of Ludgate, and Becker, another member of the board,[2] approved the agreement.

Count I of plaintiff's complaint alleges that Becker and Lape violated their fiduciary duties as directors by causing Ludgate to enter into the agreement; Counts II and III seek, respectively, the imposition of a constructive trust and a rescission remedy against ACIC to recover the monies paid to it under the agreement. Defendants assert that English law governs each of plaintiff's claims for relief. The commutation agreement itself provides that it is subject to English law, and that Ludgate and ACIC "irrevocably submit to the non-exclusive jurisdiction of the English courts."

---

1. Plaintiff Ludgate is a United Kingdom corporation with its principal place of business in London, England. Defendants Becker and Lape are residents of Illinois. Defendant ACIC is a Missouri corporation with its principal place of business in Illinois. The amount in controversy exceeds $50,000.

2. In addition, Becker acted as president and chief executive officer, and Lape as senior vice-president of MMI Companies, Inc. (MMI), Ludgate's sole shareholder at the time the commutation agreement was finalized.

The English action, which defendants allege is related to this one, was brought in January 1995 by Ken Randall Associates Limited (Randall) against MMI for alleged misrepresentations and breach of warranty with regard to the 1992 sale of Ludgate. On or about the same day that Ludgate and ACIC finalized the commutation agreement, MMI sold Ludgate to Randall, and Randall has remained Ludgate's sole shareholder since that time. Randall claims in the English action that MMI breached various representations and warranties contained in the agreement of sale with respect to Ludgate's financial condition. Specifically, Randall includes in its writ of summons an allegation that the commutation agreement at issue here—which was finalized just prior to Randall's purchase of the company—rendered Ludgate's margin of solvency insufficient to comply with United Kingdom regulations. Furthermore, Randall alleges that MMI knew or should have known that the agreement was going to have such an effect when it entered into it on behalf of Ludgate.

Defendants now move to dismiss this action on the ground of *forum non conveniens,* arguing that the courts of the United Kingdom provide an adequate and more convenient forum for the resolution of the matter. In the alternative, they move for a stay pending the outcome of the English action.

## DISCUSSION

### I. Forum Non Conveniens

■ The Seventh Circuit requires district courts to consider four areas in analyzing a motion based on *forum non conveniens:* (1) the availability of an adequate alternative forum; (2) the appropriate deference to the plaintiff's choice of forum; (3) "private interest" factors; and (4) "public interest" factors. *Macedo v. Boeing Co.,* 693 F.2d 683, 686–90 (7th Cir.1982).

### A. Adequate Alternative Forum

■ At the outset "we must consider whether an alternative forum exists," for no *forum non conveniens* inquiry may proceed if dismissal in the chosen forum would deprive the plaintiff of the only court in which jurisdiction is proper. *Alexander Proudfoot, Plc v. Federal Ins. Co.,* 860 F.Supp. 541, 544 (N.D.Ill.1994) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 n. 22, 102 S.Ct. 252, 265 n. 22, 70 L.Ed.2d 419 (1981)). Here, whether or not defendants are within the statutory jurisdiction of the courts of the United Kingdom, they have made themselves, through express representations in the motion and briefs before us, amenable to process in that forum and consented to its jurisdiction. This more than meets defendants' burden. The requirement that there be an adequate alternative forum "does not require that the defendant be amenable to process in the alternative forum; consent to the forum's jurisdiction is sufficient." *Roynat, Inc. v. Richmond Transp. Corp.,* 772 F.Supp. 417, 419 (S.D.Ind.1991) (citing *Macedo v. Boeing Co.,* 693 F.2d at 687).[3] The courts of the United Kingdom thus provide an adequate alternative forum for this action.

### B. Deference to Plaintiff's Choice of Forum

■ While district courts are instructed to grant due consideration to a plaintiff's choice of forum, less deference is accorded where the plaintiff is not an American citizen. *See Piper Aircraft Co. v. Reyno,* 454 U.S. at 241, 102 S.Ct. at 258; *Macedo v. Boeing Co.,* 693 F.2d at 688; *Alexander Proudfoot, Plc v. Federal Ins. Co.,* 860 F.Supp. at 544 (foreign plaintiff's choice of forum "will not be entirely discounted" but will be granted "somewhat less consideration"). It is undisputed that Ludgate is an English corporation with its principal place of business in England. As such, Ludgate is a foreign plaintiff. Its choice of this district as forum for its suit

3. Where the proposed alternative forum "does not permit litigation of the subject matter of the dispute," dismissal on the grounds of *forum non conveniens* may be inappropriate despite defendant's consent to jurisdiction in that forum. *Piper Aircraft,* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. We encounter no such difficulty here. As discussed *infra,* English law governs this action regardless of the forum in which it is heard. "It therefore does not matter whether [plaintiff's] claims are decided by this Court or by [an English] court; the result should be the same." *Roynat, Inc. v. Richmond Transp. Corp.,* 772 F.Supp. at 420.

thus weighs against dismissal for *forum non conveniens* with less force than it would in a case involving a native plaintiff. *See Macedo,* 693 F.2d at 688. Indeed, district courts are "entitled to be far less deferential toward [a plaintiff's] choice" whenever "the plaintiff does not reside in his chosen forum." *Interpane Coatings v. Australia & New Zealand Banking Group, Ltd.,* 732 F.Supp. 909, 915 (N.D.Ill.1990) (citation omitted) (noting nevertheless that the more relevant distinction is "whether or not the plaintiff who has selected the federal forum is an American citizen"). Thus, while the presumption in favor of the plaintiff's choice of forum is ordinarily "overcome only when the private and public interest factors clearly point towards trial in the alternative forum," the balance need not so strongly favor the defendant's position where, as here, the plaintiff is foreign. *Macedo,* 693 F.2d at 688 (citations omitted).

### C. *Private Interest Factors*

We proceed, then, with the balancing of private and public interest factors mandated by the Supreme Court in *forum non conveniens* analyses. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843–44, 91 L.Ed. 1055 (1947). The private interest factors delineated in *Gilbert* include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of viewing the premises, if a viewing would be appropriate to the action; and (5) all other practical problems that make the trial of cases easy, expeditious and inexpensive. *Id.*

Here the private interests weigh slightly in favor of dismissing the action. Although potential witnesses and sources of proof appear to be equally distributed between Illinois and England, defendants' opportunity to implead a third party defendant and to consolidate the action in England may be jeopardized by maintaining the action in this forum, factors which in this case slightly weigh in favor of defendants.

### 1. *Convenience of Witnesses and Access to Documents*

It has been stated that "[t]he main factor in assessing the private interest is the convenience of the witnesses." *Interpane Coatings v. Australia & New Zealand Banking Group, Ltd.,* 732 F.Supp. at 916. Here the balance does not favor either party's position. As stated *supra,* this action revolves around the potential profits allegedly sacrificed by Ludgate when it entered into the commutation agreement with ACIC. As the reinsured in the contracts commuted by the agreement, plaintiff argues that ACIC and its personnel have the best access to the documents and knowledge regarding claims, or the lack of them, that might have been made under the contracts had they remained viable.[4] According to plaintiff it is these sources that are most relevant to the potential profitability of the contracts. Since most if not all of the witnesses with personal knowledge of these items presumably reside in Illinois, trial in the Northern District of Illinois therefore would be more convenient. In addition, plaintiff notes that all defendants, including Becker and Lape, are resi-

---

4. Specifically, in an affidavit filed with plaintiff's brief Stephen Richard Derrick Bailey (Bailey), a current director of Ludgate, states that ACIC "should possess" the following relevant evidence: "(a) policy files for all business written by ACIC which was ceded to Ludgate under the terms of the Reinsurance Contracts or, but for the commutation, would have been ceded under the terms of the Reinsurance Contracts; (b) claims files and premium records for all the business written by ACIC which was ceded to Ludgate under the terms of the Reinsurance Contracts or, but for the Commutation, would have been ceded under the terms of the Reinsurance Contracts; (c) documents reflecting the reserves that ACIC established on the claims that were subject to the Reinsurance Contracts and the method of calcu-

lating such reserves; (d) analyses of the profitability of the business reinsured pursuant to the Reinsurance Contracts; (e) quarterly records of paid and outstanding losses, as well as the premiums paid by ACIC to Ludgate pursuant to the Reinsurance Contracts; (f) accounting records reflecting the payment of funds to ACIC by Ludgate pursuant to the Commutation; (g) records relating to the use, application, and disposition of the funds paid to ACIC by Ludgate pursuant to the Commutation; (h) documents relating to any communication between or among the Defendants, MMI and the employees and agents of ACIC and MMI regarding the Reinsurance Contracts and the Commutation Agreement; and (i) the Reinsurance Contracts themselves."

dents of and subject to service in Illinois. An English court would not have the authority to compel these witnesses to testify or cooperate with discovery.

Defendants have mitigated somewhat the force of these arguments by indicating their willingness to accept service in England, as well as to testify and produce documents at trial in England at their own cost. In addition, defendants argue that current and former employees of Ludgate and Randall, both English corporations, will be necessary witnesses in this matter. They allege that both Ludgate and Randall, its current sole shareholder, have records of the potential profitability of the reinsurance contracts, as well as those documenting Becker and Lape's understanding of this potential at the time they approved the agreement. As a result, trial in the United Kingdom would be more convenient.[5] Moreover, defendants argue that witnesses from these entities may not be subject to compulsory process in the Northern District of Illinois.

With regard to the possible witnesses in this matter and the relative inconvenience to them, we side with neither plaintiff nor defendant.[6] Determining the potential profitability of commuted reinsurance contracts, and directors' knowledge of that information, will require a complex, multi-faceted analysis. We can envision one party or the other calling witnesses from Ludgate, ACIC, Randall, and any number of other entities to which employees, consultants and other informed persons have dispersed since the commutation agreement was negotiated and finalized in 1991.[7] Without greater precision by the parties as to the names and proposed testimony of possible witnesses, it is impossible in this case to favor either party on this factor. *But c.f., Piper Aircraft,* 454 U.S. at 258, 102 S.Ct. at 267 (there is no need for great specificity by the parties where the connections to the alternative forum are "overwhelming," and it would take "extensive investigation" by the defendants to identify crucial witnesses).

Nor are we persuaded by arguments regarding the availability of compulsory process in the alternative forums. Neither party has provided us with a list of specific witnesses they intend to call, or issues attendant to compelling their testimony. In this context it would be premature to weigh this factor in favor of either party. If we maintain jurisdiction over this matter, and the need to compel witnesses outside the scope of our substantial reach arises, we can revisit the *forum non conveniens* issue at that time and assess with more precision exactly what is at stake.

### 2. *Practical Problems*

#### a. *Possibility of Consolidation*

When an action can be consolidated efficiently with pending litigation in an alter-

---

**5.** It is of course irrelevant that Ludgate itself might be inconvenienced by trying the case in Illinois. When it brought suit in this forum, plaintiff acceded to the inconveniences and costs that typically attend trying a case in a foreign country. It would be inappropriate for us, and certainly for defendants, to protect Ludgate from inconveniences that it has apparently embraced. Indeed, we are struck by the symmetry of the parties' desires here. Both plaintiff and defendants seem quite anxious to litigate this matter in the forum *least* convenient to themselves geographically. As we noted previously, however, it is the plaintiff's choice of forum, not the defendant's alternate proposal, which must be accorded deference, albeit less so in the case of a noncitizen plaintiff. *See Macedo* 693 F.2d at 688. Thus, plaintiff's willingness to inconvenience itself guides our analysis, rather than defendants'.

**6.** We note, however, that one convenience factor slightly favors defendants. Since English law is likely to be applied here, *see infra,* it is proper to consider the additional expense and inconvenience of requiring the testimony of expert witnesses on English law. The use of experts is costly to the parties in terms of both time and money, a consideration which weighs in favor of dismissal here. *See Interpane Coatings, Inc. v. Australia and New Zealand Banking Group Ltd.,* 732 F.Supp. at 917 (the added burden of needing expert witnesses on foreign law "affects not only the public interest in avoiding wasted time, but also the private interest in avoiding excessive inconvenience and expense").

**7.** Similarly, despite the parties' assertions to the contrary, we are not convinced that the majority of relevant documents and other evidence in this matter is likely to be found in one forum or the other. While documents establishing the profitability of the commuted reinsurance may be found largely in Illinois, as plaintiff argues, documents relating to defendant Becker and Lape's understanding of these contracts are more likely than not to be found in England.

native forum, dismissal for *forum non conveniens* is favored. *See Banco Nominees Ltd. v. Iroquois Brands, Ltd.*, 748 F.Supp. 1070, 1078 (D.Del.1990) (action pending in alternative forum involved the same defenses, witnesses and evidence). Here defendants argue that despite the fact that the English action involves different parties and is not focused wholly on the commutation agreement, the similarity of the actions is sufficient to suggest dismissal in the Northern District of Illinois. *See Fassi v. LJN Toys, Ltd.*, 753 F.Supp. 486, 491 (S.D.N.Y.1990) (similar issues in both actions, rather than identical parties, must be present to favor a defendant's motion for *forum non conveniens* ), *aff'd* 948 F.2d 1276 (1991).

In support of this contention defendants argue that the commutation agreement is directly at issue in the English action, albeit in a more limited manner. They assert that the effect of the agreement on the solvency margin of Ludgate after Randall's purchase of the company, which forms the basis for the agreement's relevance to the English action, is directly related to the agreement's overall financial effects on Ludgate that give rise to the claims in the action pending in this district. Accordingly, they argue, the witnesses and evidence in each case largely overlap and judicial waste would be avoided if the actions were consolidated. Furthermore, defendants argue that the parties in the two actions are different in name only: Randall, the plaintiff in the English action, is the sole shareholder of Ludgate, the plaintiff in the case before us here; and Becker and Lape, the defendants here, are officers of MMI, the defendant in the English action. Summing up defendants' position, Mr. Christopher John Wilkes (Wilkes), MMI's attorney in the English action, declares that he "believes that ... the actions commenced [in Illinois and England] are sufficiently similar in nature, parties and interlinking issues for the actions to be consolidated or heard concurrently in the English Courts."

Plaintiff contests this declaration. Mr. Alasdair Campbell Gillies (Gillies), Randall's attorney in the English action, who like Wilkes is a solicitor in England's highest court, states in an affidavit that "even if the Ludgate claims were brought in an English Court, it is very unlikely that the Court would consolidate the proceeding with the English Action." In the United Kingdom consolidation of actions is proper when the cases have a common question of law or fact or the rights to relief arise out of the same transaction or series of transactions. Rules of the Supreme Court of Judicature, 0.4 r. 9 (1965). Here defendants claim that since the commutation agreement is at issue in both cases, there is a common issue of fact. Plaintiffs refute this contention, arguing that the "incidental fact of the Commutation, not its impropriety or otherwise" is part of the English action. In addition, plaintiff notes that while the action brought by Ludgate in this court seeks the remedies of rescission, constructive trust and restitution, the English action only seeks damages for the short-term diminution in the value of Ludgate. Without a common issue of law or fact, or a claim for the same relief, plaintiff argues that there is no basis for the cases to be consolidated in an English court.

We need not delve into the intricacies of the English law of consolidation, or decide between the veracity of Mr. Wilkes' and Mr. Gillies' interpretation of it, because it is clear from the record that regardless of the likely resolution of the issue few if any judicial resources would be saved if the English action and this one were consolidated or heard concurrently. With regard to the commutation agreement, the English action requires a quantification of the allegedly diminished margin of solvency due to Ludgate's participation in the agreement and a determination of whether MMI knew about the problem and misrepresented it to Randall prior to the sale. These inquiries do not necessarily affect the determination of whether the commutation agreement was as a whole in Ludgate's best interests (*i.e.*, whether it sacrificed profits without adequate compensation), which is at the heart of the action before this court. Regardless of the margin of solvency with which Ludgate was left after the sale and the finalization of the commutation agreement, defendants Becker and Lape may have breached their fiduciary duties. In addition, while Ludgate seeks to reverse or otherwise gain repayment of the commuta-

tion agreement in the case before us, Randall seeks in the English action only to recover damages for one specific effect of that agreement.

Thus, the cases not only involve distinct issues of fact and call for dissimilar remedies, they also will require the testimony of different witnesses and the production of different documents. Even if consolidation in an English court were proper, the balance in our *forum non conveniens* analysis does not weigh to any great degree in defendants' favor on this factor. The purpose of favoring dismissal when consolidation in a foreign forum is possible, is to promote the efficiency of the courts and to save judicial and litigation resources. *See Banco Nominees Ltd. v. Iroquois Brands, Ltd.,* 748 F.Supp. at 1078. Little if anything would be saved if the English action and the one before us here were brought together in a single jurisdiction.

### b. *Possibility of Impleader*

In support of their motion defendants argue that trial in this district might deprive them of the opportunity to implead Randall, a corporation which is outside the jurisdiction of this court. Such a circumstance, if true, weighs in defendants' favor. *See Piper Aircraft,* 454 U.S. at 259, 102 S.Ct. at 267 ("problems posed by the inability to implead potential third-party defendants clearly support[s] holding the trial in [the foreign forum]"). Here we acknowledge that in all likelihood this court would be powerless to assert jurisdiction over Randall, an English corporation with no significant contacts abroad, if defendants in fact attempted to implead the corporation while we maintained the action in this forum. However, the effect of this problem tips the balance to defendants in a less substantial degree than it might in other cases since we suspect that there would be little merit in defendants making such an attempt.

Defendants allege in their briefs that Randall may have approved and ratified the terms of the commutation agreement even though it was finalized prior to the company's purchase of Ludgate. There can be no serious contention, however, that prior to its ownership Randall's duties rose to the level of a fiduciary. It is thus unclear on what basis, and to what extent, defendants Becker and Lape, who as then current directors of Ludgate clearly owed a fiduciary duty to the corporation, can seek indemnification or contribution from Randall, an interested but uninvolved third party to the transaction. Similarly, any attempt by defendant ACIC to gain contribution or indemnification from Randall for the remedies of rescission and constructive trust seems to hold little merit. In sum, defendants' proposed impleading of Randall at best would be of minor importance to defendants' post-trial burdens, a circumstance which sets this case apart from those in which the inability to implead in the chosen forum was an important factor in the *forum non conveniens* analysis. *See e.g., Piper Aircraft,* 454 U.S. at 259, 102 S.Ct. at 267 (strong possibility that impleaded party would completely indemnify or contribute a large proportion of a damage award); *Fitzgerald v. Texaco,* 521 F.2d 448, 453 (2d Cir. 1975) (parties that defendant wished to implead were "directly involved in the controversy"), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976). Regardless, these are issues that may be addressed with more precision if and when defendants move to implead Randall. We can revisit the *forum non conveniens* analysis at that time.

### D. *Public Interest Factors*

The public interest factors which district courts are instructed to consider in analyzing *forum non conveniens* questions include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided "at home;" (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *See Piper Aircraft* 454 U.S. at 241, n. 6, 102 S.Ct. at 258, n. 6 (quoting *Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843).

In the case before us, the public interest balance is virtually equal. Although Illinois has a strong local interest in the action which justifies our commitment of judicial resources

to the case, English law likely will govern each of the causes of action.

### 1. *Local Interests*

Contrary to defendants' arguments, this is not a case in which the plaintiff's chosen forum does not have a substantial relationship to the parties or the cause of action. All of the defendants reside or do business in Illinois, the state in which this court sits. In bringing its action, plaintiff seeks to recover assets and impose damages on Illinois residents. Furthermore, the underlying commutation agreement was negotiated and signed by ACIC, which maintained then as it does now its principal place of business in Illinois.

We do not mean to imply, of course, that England does not have a significant interest in this litigation as well. Not only is the plaintiff a citizen of the United Kingdom, but by agreement of the parties and by operation of choice of law rules, *see infra*, English law governs the action. The focus of this action is, however, not on the margin of solvency and the viability of the insurance company after the commutation agreement was finalized—as it is in the English action—but on the sagacity of the agreement as a whole. As such, the state of defendants' current residence has as great an interest in protecting its residents as England has in protecting the assets of the company. This is true regardless of the law that will govern the action. In sum, we find the commitment of our judicial time and resources, in addition to that of a jury of Illinois residents, is warranted by this action's general nexus with the State of Illinois.

### 2. *Law to be Applied*

The need to apply foreign law in the plaintiff's chosen forum has been found to point toward dismissal for *forum non conveniens*. *See Alexander Proudfoot, Plc. v. Federal Ins. Co.,* 860 F.Supp. at 545 ("Perhaps the most salient consideration in the analysis of public interest factors is the determination of the law governing the dispute"). *See also Piper Aircraft,* 454 U.S. at 260, 102 S.Ct. at 268. However, this factor alone is insufficient to warrant dismissal where the balance of the other private and public interests favors the plaintiff. *Id.* at 260 n. 29, 102 S.Ct. at 268 n. 29. Here plaintiff does not appear to seri-

ously contest defendants' assertion that each of the causes of action is governed by English law. Counts II and III of plaintiff's complaint, in addition to the commutation agreement itself, explicitly state that they are premised on English law.

■■■■ Furthermore, application of choice of law rules indicate that English law would be applied if the case were tried in this forum. A federal court sitting in diversity in Illinois must apply Illinois choice of law rules. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When a contract has an explicit choice of law provision, and a cause of action is premised on the contract, Illinois courts look to the law established by that provision unless the chosen state has no substantial relationship to the parties or the transaction, or the public policy of Illinois would be violated. *See International Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Illinois,* 209 Ill.App.3d 144, 154 Ill.Dec. 9, 14, 568 N.E.2d 9, 14 (1990) (citing Restatement (Second) of Choice of Laws § 187 (1971)). Here, England clearly has a substantial relationship to the cause of action, and there is no contention that Illinois' public policy would be subverted if English law were applied as the parties agreed. The duties owed by a fiduciary are also at issue in the case before us. Illinois choice of law rules state that the law of the state of incorporation controls on these issues. *See Libco Corp. v. Roland,* 99 Ill.App.3d 1140, 55 Ill. Dec. 334, 426 N.E.2d 309 (1981); *Paulman v. Kritzer,* 74 Ill.App.2d 284, 219 N.E.2d 541 (1966), *aff'd,* 38 Ill.2d 101, 230 N.E.2d 262 (1967). Since defendants Becker and Lape were officers of Ludgate, an English corporation, English law will apply on plaintiff's breach of fiduciary duty claims as well.

### E. *Overall Balance*

■■■ The overall calculus of the *forum non conveniens* analysis is quite close. While the public interest balance is even, private interest factors slightly favor defendants. In this context the presumption in favor of a plaintiff's chosen forum, however diminished by the fact that it is not an American citizen, tips the balance in favor of main-

taining the case in this court. The presumption is weightier in cases such as this one where the chosen forum has a relatively strong local interest in the outcome of the case. Defendants' motion to dismiss is denied.

## II. *International Abstention*

Defendants next move for a stay of these proceedings pending the outcome of the English action. Under certain "exceptional circumstances" federal district courts may order a stay or dismissal of an action to avoid duplicative litigation in a foreign country. *See Ingersoll Mill. Mach. Co. v. Granger*, 833 F.2d 680, 684 (7th Cir.1987) (using the state-federal abstention doctrine of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) as "a helpful guide" in evaluating international abstention). *See also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983) (" 'only the clearest of justifications will warrant dismissal' "); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 926–27 (D.C.Cir.1984) (federal trial court should usually exercise jurisdiction concurrently with foreign trial court, "at least until a judgment is reached in one which can be pled as res judicata in the other").

In the Seventh Circuit the *Colorado River* abstention analysis begins with an inquiry into whether the concurrent foreign and federal actions are parallel. *See Caminiti and Iatarola, Limited v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). "A suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Beres v. Village of Huntley, Ill.*, 824 F.Supp. 763, 767 (citing *Caminiti*). We find that the circumstances here fall short of this threshold requirement.

None of the parties in this action is named in the English action. Defendants argue nevertheless that the interests of the parties in each case are substantially the same since Ludgate's sole shareholder, Randall, and the corporation for which Becker and Lape act as officers, MMI, are the parties in the English action. While there may be cases where the interests of different parties in the two cases substantially overlap, this case is not among them. As discussed *supra*, the English action is largely unrelated to the one before us. The mere fact that the commutation agreement is at issue in both cases does not make the suits parallel. *See Mitsui Taiyo Kobe Bank, Ltd. v. First Nat. Realty and Development*, 788 F.Supp. 1007, 1009–10 (N.D.Ill.1992). Even if the court hearing the English action finds that the commutation agreement had no effect on Ludgate's margin of solvency, plaintiff's claim in this action is not necessarily without merit. Thus, there is not a substantial likelihood that the litigation in the United Kingdom will dispose of all claims presented in this case. In the absence of such a probability, abstention is improper. *See Day v. Union Mines Inc.*, 862 F.2d 652, 656 (7th Cir.1988); *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir.1985).

We would come to the same conclusion even if we reached the second step of the *Colorado River* analysis, where the following factors are balanced: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Caminiti*, 962 F.2d at 701; *Beres v. Village of Huntley, Ill.*, 824 F.Supp. at 768; *Home Federal Bank For Sav. v. Gussin*, 783 F.Supp. 363, 367 (N.D.Ill.1992).

In this case some factors weigh in favor of abstention while others weigh against it. As a whole, however, the balance does not favor granting defendants' motion for a stay. While English law in all likelihood will govern the claims in both actions, it nonetheless would be convenient to try this case where it presently sits. *See supra*. In addition, since the two suits are quite dissimilar, we would not avoid piecemeal litigation by staying our

hand. Finally, although the English action was brought six months before this one, it has not advanced significantly further than the one before us. According to Wilkes' declaration a timetable was scheduled to be set for the English action in late October 1995, marking the end of the pleading period and the possible commencement of discovery. This action is thus only a couple of months behind the one in the United Kingdom. *See Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 939 ("priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions").

Nor are we persuaded that concerns of international comity tip the balance in defendants' favor. Even if we were to adopt defendants' characterization of the deference owed to concurrent foreign proceedings,[8] abstention in this case would be inappropriate. Neither the parties nor the issues in the two cases are significantly similar; full relief in the English action would not adequately resolve the claims in this one; prejudice or unfairness to either party is unlikely; and there would be little if any promotion of judicial efficiency if we were to stay the proceedings while the English action pends. Furthermore, by retaining jurisdiction in this district we would maintain the appropriate level of respect for England, as well as fairness to the parties and commitment to the efficient use of scarce judicial resources. *See Turner Entertainment,* 25 F.3d at 1518. In sum, we decline to stay these proceedings.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or stay is denied.

---

8. Plaintiff and defendants strongly disagree as to the appropriate weight to be accorded notions of comity. Plaintiff argues that the Seventh Circuit has adopted a standard which accords significantly less consideration to this factor than other Circuits. *See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,* 10 F.3d 425 431 (7th Cir.1993); *Philips Medical Systems Intern. B.V. v. Bruetman,* 8 F.3d 600, 604–05 (7th Cir.1993). In contrast, defendants argue that plaintiff's standard is only relevant in cases involving injunctive relief, and

that abstention is granted under the same standard whether the case involves concurrent proceedings before a foreign or a state court. *See Turner Entertainment Co. v. Degeto Film GmbH,* 25 F.3d 1512 (11th Cir.1994); *Ingersoll Mill. Mach. Co. v. Granger,* 833 F.2d at 685–86; *Brinco Mining Ltd. v. Federal Ins. Co.,* 552 F.Supp. 1233 (D.D.C.1982). We need not resolve the parties' dispute here, however, since our decision to deny defendants' motion is grounded on threshold issues. *See supra.*